## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| **TINNUS ENTERPRISES, LLC,** | ) |
| **and** | ) |
| **ZURU LTD.,** | )     **Civ. Action No. 6:17-cv-170** |
|    **Plaintiffs,** | )     <u>**JURY TRIAL DEMANDED**</u> |
| **v.** | ) |
| **TELEBRANDS CORP.,** | ) |
| **and** | ) |
| **BULBHEAD.COM, LLC,** | ) |
| **and** | ) |
| **BED BATH & BEYOND INC.** | ) |
|    **Defendants.** | ) |

## <u>COMPLAINT</u>

Plaintiffs Tinnus Enterprises, LLC ("Tinnus") and ZURU Ltd. ("ZURU"), by counsel, file this complaint against Telebrands Corporation ("Telebrands"), Bulbhead.com, LLC ("Bulbhead"), and Bed Bath & Beyond Inc. ("BB&B") (collectively "Defendants"), and in support thereof, plaintiffs state as follows:

## <u>NATURE OF THE ACTION</u>

1.     Plaintiffs bring this action to enjoin the manufacture, importation, distribution, use, sales, and offers to sell by Defendants of a certain product known as "Easy Einstein Balloons" that infringes or contributes toward the infringement of valid and enforceable U.S. Patents owned by

Tinnus and licensed to ZURU, as well as for monetary damages for Defendants' willful infringement. Plaintiffs also bring this action to enjoin false and misleading statements made by the Defendants, as well as monetary damages for those false statements.

## THE PARTIES

2.     Plaintiff Tinnus is a limited liability company organized under the laws of the State of Texas with its principal place of business at 3429 18th Street in Plano, Texas.

3.     Plaintiff ZURU is a company organized under the laws of Hong Kong with its principal place of business in Guangzhou, China. ZURU is a small family-owned toy company founded in Cambridge, New Zealand in 2004.

4.     Defendant Telebrands is a corporation organized under the laws of the State of New Jersey with its principal place of business at 79 Two Bridges Road in Fairfield, New Jersey.

5.     Defendant Bulbhead is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 79 Two Bridges Road in Fairfield, New Jersey.

6.     Defendant BB&B is a corporation organized under the laws of the State of New York with its principal place of business at 650 Liberty Avenue in Union, New Jersey.

## JURISDICTION AND VENUE

7.     This is a civil action for patent infringement arising under the United States patent statutes, 35 U.S.C. § 1, *et seq.*, as well for false advertising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*

8.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

9.      Defendants are subject to this Court's personal jurisdiction because they do and have done substantial business in this judicial district. In addition, upon information and belief, Defendants (directly and/or through a distribution network) have or intend to regularly place infringing products in the stream of commerce with the knowledge and/or understanding that such products will be sold in Texas and in this district. Defendants are subject to the general jurisdiction of this Court because they have regular and systematic contacts with this forum such that the exercise of jurisdiction over them would not offend traditional notions of fair play and substantial justice.

10.     Additionally, upon information and belief, Defendants are offering to sell infringing products and making false and misleading statements throughout the United States, including in Texas and in this judicial district.

11.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c), as well as under 28 U.S.C. § 1400(b).

## THE PATENTS-IN-SUIT

12.     On January 26, 2016, the United States Patent and Trademark Office ("USPTO") duly and legally issued to Tinnus United States Patent No. 9,242,749 ("'749 Patent," attached as **Exhibit A**), entitled "System and Method for Filling Containers with Fluids." The '749 Patent is a continuation of United States Patent No. 9,051,066, which issued to Tinnus on June 9, 2015. The '749 Patent includes one independent claim.

13.     Any required maintenance fees have been paid, and the '749 Patent has not expired. Tinnus is the owner by assignment of the entire right, title, and interest in the '749 Patent. ZURU is the exclusive licensee of the '749 Patent, and thus both plaintiffs have standing to sue for infringement of the '749 Patent.

14.     On April 19, 2016, the USPTO duly and legally issued to Tinnus United States Patent No. 9,315,282 ("'282 Patent," attached as **Exhibit B**), entitled "System and Method for Filling Containers with Fluids." The '282 Patent is a continuation of United States Patent No. 9,051,066, which issued to Tinnus on June 9, 2015. The '282 Patent includes one independent claim and two dependent claims.

15.     Any required maintenance fees have been paid, and the '282 Patent has not expired. Tinnus is the owner by assignment of the entire right, title, and interest in the '282 Patent. ZURU is the exclusive licensee of the '282 Patent, and thus both plaintiffs have standing to sue for infringement of the '282 Patent.

16.     On December 27, 2016, the USPTO duly and legally issued to Tinnus United States Patent No. 9,527,612 ("'612 Patent," attached as **Exhibit C**), entitled "System and Method for Filling Containers with Fluids." The '612 Patent is a continuation of United States Patent No. 9,051,066, which issued to Tinnus on June 9, 2015. The '612 Patent includes one independent claim and three dependent claims.

17.     Any required maintenance fees have been paid, and the '612 Patent has not expired. Tinnus is the owner by assignment of the entire right, title, and interest in the '612 Patent. ZURU is the exclusive licensee of the '612 Patent, and thus both plaintiffs have standing to sue for infringement of the '612 Patent.

18.     On January 3, 2017, the USPTO duly and legally issued to Tinnus United States Patent No. 9,533,779 ("'779 Patent," attached as **Exhibit D**), entitled "System and Method for Filling Containers with Fluids." The '779 Patent is a continuation of United States Patent No. 9,051,066, which issued to Tinnus on June 9, 2015. The '779 Patent includes four independent claims and nine dependent claims.

19.     Any required maintenance fees have been paid, and the '779 Patent has not expired. Tinnus is the owner by assignment of the entire right, title, and interest in the '779 Patent. ZURU is the exclusive licensee of the '779 Patent, and thus both plaintiffs have standing to sue for infringement of the '779 Patent.

**FACTS**

20.     Josh Malone ("Mr. Malone") is the founder and sole owner of Tinnus and the sole inventor of the '749 Patent, '282 Patent, '612 Patent, and '779 Patent.

21.     By early 2014, Mr. Malone, a father and an inventor, had developed a revolutionary new toy product (a product that is now marketed and sold as "Bunch O Balloons"), which would allow someone to fill as many as 100 water balloons which self-seal themselves in approximately 60 seconds.

22.     The device includes a hose attachment with an opposite end that is fitted with multiple flexible tubes that connect to balloons. Versions of the device have included 35 or 37 balloons. When the hose is turned on, the balloons fill and are automatically sealed when released of the hose attachment assembly. A website advertising Mr. Malone's Bunch O Balloons product can be found at www.buybunchoballoons.com.

23.     In March 2014, Mr. Malone, through Tinnus, began taking steps to manufacture the Bunch O Balloons product using certain contractors. The first batch of product was manufactured in June 2014. Manufacturing of the Bunch O Balloons product has continued since that time.

24.     To help raise funds for the manufacture and marketing of the Bunch O Balloons product, Mr. Malone, through Tinnus, launched a Kickstarter campaign on July 22, 2014.

25.     Kickstarter is the world's largest Internet crowdsource funding platform for creative projects.

26.     In less than 12 hours, the project was fully funded to its initial $10,000 goal, and within five days, the project had received over a half of a million dollars in startup funding.

27.     To date, that funding has reached nearly $1 million, and the Kickstarter video featuring the Bunch O Balloons product has had approximately 2.9 million views.

28.     On the same day Mr. Malone launched the Kickstarter campaign, July 22, 2014, *Sports Illustrated* featured his Bunch O Balloons invention in its online magazine.

29.     Two days later, *Time* magazine ran a story about his novel product on its website.

30.     That same day, July 24, 2014, Mr. Malone's invention was featured on a nationally-televised broadcast of *Good Morning America*.

31.     Shortly thereafter on July 27, *People* magazine covered the Bunch O Balloons product on its website.

32.     Then, on July 29, just a week after Mr. Malone began his Kickstarter campaign, Mr. Malone appeared on the *Today Show* with his unique invention during a nationally-televised broadcast.

33.     Moreover, the Bunch O Balloons product went viral on the web, including one YouTube review of Mr. Malone's invention, which has in excess of 24 million views.

34.     On July 22, 2014, the same day Mr. Malone launched his Kickstarter campaign, he received his first orders from the public for the Bunch O Balloons product, which included 598 orders.

35.     Mr. Malone sold out his initial production batch on the first day of his Kickstarter campaign.

36.     Mr. Malone received those orders before Telebrands began offering its infringing product.

37.     As the publicity surrounding Mr. Malone's invention increased, so too did the interest in his product.

38.     On August 21, 2014, Tinnus launched its website, www.bunchoballoons.com, to accept increasing numbers of product orders. That website continues to receive product orders to this day.

39.     On August 29, 2014, Tinnus shipped its first batch of the Bunch O Balloons product to customers located in the U.S. and around the world. Shipping has continued since that time.

40.     Also, in August 2014, ZURU and Tinnus began negotiations to partner with each other for the manufacture, marketing, and sale of the Bunch O Balloons product.

41.     On August 19, 2014, Tinnus and ZURU entered into a license agreement wherein Tinnus granted ZURU an exclusive license to intellectual property rights, including patents, relating to the Bunch O Balloons product.

42.     Following execution of the license agreement, ZURU immediately began heavily investing in the development, production, and marketing of the Bunch O Balloons product.

43.     To date, ZURU has invested millions of U.S. dollars in production and facilities to ramp up the product output.

44.     As described below, Telebrands has engaged in a continuing scheme to copy and mimic the extremely successful Bunch O Balloons product.

45.     Telebrands is no stranger to litigation. Public records indicate that since 1983, Telebrands has been sued more than 50 times for infringement of other persons' intellectual property rights.

46.     Ajit Khubani is the CEO and founder of Telebrands. Mr. Khubani has been referred to as the "Knock-Off King" in the television infomercial industry.

47.    In fact, Mr. Khubani himself has admitted that he got his start by selling a copy of another company's product. In an interview that Mr. Khubani apparently gave for an article titled "A. J. Khubani, Telebrands: My First Million" that appeared on the *Huffington Post* website in 2011, Mr. Khubani is quoted as follows: "So I thought of this idea of selling products through mail order. I had connections to suppliers of electronics through my father, and I started looking through some trade journals. I found a product - an AM/FM Walkman-style radio - that I thought would sell really well. It was 1983, when one of the bestselling products on the marketplace was the Sony Walkman. It was selling for $60, which was a lot of money back then. I found that I could sell this particular AM/FM style radio that looked like a Walkman for about $10, so . . . I . . . wrote an ad, put it in the National Enquirer and waited for the orders to come in." (*See* **Exhibit E**.)

48.    In addition, Peter Bieler, the gentleman responsible for successfully marketing the popular ThighMaster product, stated in his book, *This Business Has Legs*: "I was more than familiar with A. J. Khubani. He was a legend in his own time, a knock-off artist par excellence. He had a reputation in the infomerial [sic] business as someone who'd kill your direct response campaign by selling his copies to the retailers, who'd sell them for half the price. Your phones stopped ringing." (*See* **Exhibit F**.)

49.    Further, Mr. Remy Stern wrote in his book, *But Wait … There's More!*: "Khubani's greatest distinction . . . is that in [the infomercial] industry where almost every new product is a rehash of a previous product and there are precious few true inventions, he has carved out a reputation as one of the most shameless copycats in the business. . . . Creating cheaper versions of other people's products has since become firmly embedded in Telebrands' business plan." (*See* **Exhibit G**.)

50.     In addition, Telebrands has been accused of violating consumer protection laws. It has been the subject of various federal and state investigations and actions arising out of unfair competition and consumer fraud, the latest being a suit by the New Jersey Attorney General and state Division of Consumer Affairs initiated in August 2014.

51.     The nationally-recognized Better Business Bureau's ("BBB") Board of Directors revoked Telebrands' status as an "Accredited Business." Upon information and belief, the BBB Board did so because the BBB had received 1,397 complaints relating to Telebrands within the three years prior to the revocation.



52.     Telebrands has repeatedly attempted to compete with plaintiffs by copying plaintiffs' highly successful Bunch O Balloons product and selling knock-offs. In 2015, Telebrands began selling its "Balloon Bonanza" product, which looked virtually identical to Bunch O Balloons and which functioned exactly the same way as Bunch O Balloons. In December 2015, this Court enjoined the Balloon Bonanza product, finding that Balloon Bonanza likely infringed plaintiffs' patent.

53.     Only weeks later in or around December 2015, Telebrands began marketing and offering to sell another copy of Bunch O Bunch, which Telebrands called "Battle Balloons." Plaintiffs again moved for a preliminary injunction against Telebrands, and in October 2016, this Court likewise enjoined the Battle Balloons product.

54.     Undeterred, Telebrands has very recently rushed to the market with a "third generation" knockoff of the Bunch O Balloons product. Telebrands is currently marketing and selling this "new" product under the name "Easy Einstein Balloons." Like Telebrands' prior enjoined copies, Easy Einstein Balloons infringes plaintiffs' patents, as described more fully below.

55.     Below is a side-by-side comparison of plaintiffs' patented Bunch O Balloons product and Telebrands' Easy Einstein Balloons product:



**Bunch O Balloons**          **Easy Einstein Balloons**

56.     Consumers have repeatedly confused Telebrands' infringing multiple balloon filling products with plaintiffs' patented Bunch O Balloons product. As a result, consumers have falsely associated Telebrands' low-quality balloon products with ZURU's high-quality Bunch O Balloons product.

57.     Bulbhead is an affiliate of Telebrands. Bulbhead recently began marketing and offering to sell on its website Telebrands' Easy Einstein Balloons product.

58.     BB&B is currently selling Easy Einstein Balloons online and in retail stores.

59.     Defendants are, among other things, manufacturing, importing, using, selling, and/or offering to sell the Easy Einstein Balloons product, which infringes the '749 Patent, '282 Patent, '612 Patent, and '779 Patent. Consequently, plaintiffs' right to relief arises out of the same transaction, occurrence, and/or series of transactions or occurrences relating to the making, using, offering for sale, and/or selling the same infringing products.

60.     In addition to infringing plaintiffs' patents, Defendants' Easy Einstein Balloons product contains highly toxic and hazardous chemicals in amounts that the U.S. Congress has prohibited by law.

61.     In 2008, Congress passed the Consumer Product Safety Improvement Act of 2008 ("CPSIA"), which provides that "it shall be unlawful for any person to manufacture for sale, offer for sale, distribute in commerce, or import into the United States any children's toy or child care article that contains concentrations of more than 0.1 percent of di-(2-ethylhexyl) phthalate (DEHP). . . ."[1] Similarly, this statute states: "[I]t shall be unlawful for any person to manufacture for sale, offer for sale, distribute in commerce, or import into the United States any children's toy that can be placed in a child's mouth or child care article that contains concentrations of more than 0.1 percent of diisononyl phthalate (DINP). . . ."[2] Congress enacted this law to protect children.[3]

62.     Knowingly selling a product containing these hazardous substances can result in

---

[1] See 15 U.S.C. § 2057c(a); see also https://www.cpsc.gov/Business--Manufacturing/Business-Education/Business-Guidance/Phthalates-Information.

[2] See 15 U.S.C. § 2057c(b)(1).

[3] See 15 U.S.C. § 2051.

up to five years imprisonment.[4]

63.     Substantial medical literature has linked DEHP to, among other things, cancer, adverse development of the male reproductive tract *in utero*, increased insulin resistance in adolescents, impaired fertility and female obesity, preterm birth, sensitization of the heart to ischemic injury and ventricular dysfunction, liver damage, and testicular atrophy.

64.     As mentioned, the CPSIA requires that children's toys contain no more than 0.1% DEHP and 0.1% DINP.

65.     Easy Einstein Balloons is a children's toy. Indeed, the Easy Einstein Balloons packaging states that the product is appropriate for "Ages 8+."

66.     Two Consumer Product Safety Commission-accredited laboratories have tested the Easy Einstein Balloons product and concluded that it contains concentrations of toxins that exceed the Congressionally-mandated legal limit. (*See* **Exhibit H and I**.) The samples tested were obtained from Bed Bath & Beyond stores located in Texas and Virginia.

67.     Specifically, the Easy Einstein Balloons product contains as much as 16% DEHP and 0.73% DINP, which grossly exceeds the 0.1% legal limit, thereby making this toy unsafe for children. *Id.*

68.     Additionally, BB&B's website discloses that certain compounds were used in making Easy Einstein Balloons, but it fails to disclose that Easy Einstein Balloons contains chemicals in amounts that are banned in children's toys (*e.g.*, DEHP). BB&B's website also states that the product is appropriate for children "[a]ges 8 and up" when it is not.

---

[4] *See* 15 U.S.C. § 2070.

## COUNT I
## INFRINGEMENT OF THE '749 PATENT

69.     Plaintiffs reallege and incorporate by reference all of the above paragraphs of this Complaint as if fully set forth herein.

70.     Plaintiffs are the owner and exclusive licensee of the entire right, title, and interest in the '749 Patent.

71.     Defendants have and continue to manufacture, use, import, distribute, offer to sell, and/or sell in the United States the Easy Einstein Balloons product that infringes the '749 Patent. Specifically, Defendants' Easy Einstein Balloons product infringes claim 1 of the '749 Patent literally and/or under the doctrine of equivalents. The Easy Einstein Balloons product infringes claim 1 of the '749 Patent at least because the Easy Einstein Balloons product includes each and every limitation of claim 1.

72.     Defendants were aware of the '749 Patent.

73.     Defendants infringe and will continue to infringe the claim of the '749 Patent by making, using, importing, offering to sell, and/or selling within the United States the Easy Einstein Balloons product.

74.     Defendants' infringement of the '749 Patent is willful.

75.     Plaintiffs are, and will continue to be, damaged and irreparably harmed by Defendants' infringement, which will continue unless Defendants are enjoined by this Court.

## COUNT II
## INFRINGEMENT OF THE '282 PATENT

76.     Plaintiffs reallege and incorporate by reference all of the above paragraphs of this Complaint as if fully set forth herein.

77.     Plaintiffs are the owner and exclusive licensee of the entire right, title, and interest in the '282 Patent.

78.     Defendants have and continue to manufacture, use, import, distribute, offer to sell, and/or sell in the United States the Easy Einstein Balloons product that infringes the '282 Patent. Specifically, Defendants' Easy Einstein Balloons product infringes claims 1 through 3 of the '282 Patent literally and/or under the doctrine of equivalents. The Easy Einstein Balloons product infringes claims 1 through 3 of the '282 Patent at least because the Easy Einstein Balloons product includes each and every limitation of claims 1 through 3.

79.     Defendants were aware of the '282 Patent.

80.     Defendants infringe and will continue to infringe the claims of the '282 Patent by making, using, importing, offering to sell, and/or selling within the United States the Easy Einstein Balloons product.

81.     Defendants' infringement of the '282 Patent is willful.

82.     Plaintiffs are, and will continue to be, damaged and irreparably harmed by Defendants' infringement, which will continue unless Defendants are enjoined by this Court.

## COUNT III
## INFRINGEMENT OF THE '612 PATENT

83.     Plaintiffs reallege and incorporate by reference all of the above paragraphs of this Complaint as if fully set forth herein.

84.     Plaintiffs are the owner and exclusive licensee of the entire right, title, and interest in the '612 Patent.

85.     Defendants have and continue to manufacture, use, import, distribute, offer to sell, and/or sell in the United States the Easy Einstein Balloons product that infringes the '612 Patent. Specifically, Defendants' Easy Einstein Balloons product infringes claims 1 through 4 of the '612

Patent literally and/or under the doctrine of equivalents. The Easy Einstein Balloons product infringes claims 1 through 4 of the '612 Patent at least because the Easy Einstein Balloons product includes each and every limitation of claims 1 through 4.

86.     Upon information and belief, Defendants were aware that plaintiffs had a pending patent application that matured into the '612 Patent. Also, upon information and belief, Defendants were aware that the '612 Patent would issue as U.S. Patent No. 9,527,612.

87.     Defendants infringe and will continue to infringe the claims of the '612 Patent by making, using, importing, offering to sell, and/or selling within the United States the Easy Einstein Balloons product.

88.     Defendants' infringement of the '612 Patent is willful.

89.     Plaintiffs are, and will continue to be, damaged and irreparably harmed by Defendants' infringement, which will continue unless Defendants are enjoined by this Court.

**COUNT IV**
**INFRINGEMENT OF THE '779 PATENT**

90.     Plaintiffs reallege and incorporate by reference all of the above paragraphs of this Complaint as if fully set forth herein.

91.     Plaintiffs are the owner and exclusive licensee of the entire right, title, and interest in the '779 Patent.

92.     Defendants have and continue to manufacture, use, import, distribute, offer to sell, and/or sell in the United States the Easy Einstein Balloons product that infringes the '779 Patent. Specifically, Defendants' Easy Einstein Balloons product infringes claims 1-3, 5-6, 8-9, and 11-12 of the '779 Patent literally and/or under the doctrine of equivalents. The Easy Einstein Balloons product infringes claims 1-3, 5-6, 8-9, and 11-12 of the '779 Patent at least because the Easy Einstein Balloons product includes each and every limitation of those claims.

93.     Upon information and belief, Defendants were aware that plaintiffs had a pending patent application that matured into the '779 Patent. Also, upon information and belief, Defendants were aware that the '779 Patent would issue as U.S. Patent No. 9,533,779.

94.     Defendants infringe and will continue to infringe the claims of the '779 Patent by making, using, importing, offering to sell, and/or selling within the United States the Easy Einstein Balloons product.

95.     Defendants' infringement of the '779 Patent is willful.

96.     Plaintiffs are, and will continue to be, damaged and irreparably harmed by Defendants' infringement, which will continue unless Defendants are enjoined by this Court.

## COUNT V
## FALSE ADVERTISING UNDER THE LANHAM ACT

97.     Plaintiffs reallege and incorporate by reference all of the above paragraphs of this Complaint as if fully set forth herein.

98.     This cause of action for false advertising arises under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

99.     The packaging of Easy Einstein Balloons states that this product is appropriate for children "Ages 8+." Defendants all sell Easy Einstein Balloons with the "Ages 8+" recommendation on the product packaging. Similarly, Bed Bath & Beyond's website states that the Easy Einstein product is suitable for children "[a]ges 8 and up."[5]

100.    As mentioned, Congress has banned the use of DEHP and DINP in any amount greater than 0.1% in toys designed or intended for a child 12 years of age or younger for use by

---

[5] *See* https://www.bedbathandbeyond.com/store/product/easy-einstein-balloons-trade-4-pack-world-39-s-smartest-water-balloons/1060852847?Keyword=easy+einstein+balloons (last visited March 18, 2017).

the child when the child plays. Upon information and belief, Easy Einstein Balloons is marketed and sold to children under the age of twelve.

101.    The Easy Einstein Balloons product contains levels of DEHP and DINP that exceed the legal limit. Specifically, Easy Einstein Balloons contains as much as 16% DEHP, a number that is 160 times over the 0.1% legal limit. Easy Einstein Balloons also contains as much as 0.73% DINP, a number that is more than 7 times over the .1% legal limit.

102.    Defendants do not disclose anywhere that Easy Einstein Balloons contains toxic levels of DEHP and DINP that greatly exceed the legal limit mandated by Congress.

103.    Defendants' recommendation that the product is suitable for children "Ages 8+" is a false and misleading statement. That is because Easy Einstein Balloons is not appropriate for children who are eight years old or older. Specifically, this toy product contains chemicals that make it inappropriate for that age group.

104.    Upon information and belief, the statement "Ages 8+" has deceived or has the capacity to deceive a substantial segment of potential consumers.

105.    Parents routinely rely on product age recommendations—like the one on Defendants' Easy Einstein Balloons product packaging. Upon information and belief, consumers have relied on and/or are likely to rely on Defendants' recommendation of "Ages 8+" when purchasing Easy Einstein Balloons. The deception is therefore material and likely to influence consumers' purchasing decisions.

106.    Defendants advertise and sell the Easy Einstein Balloons product throughout the United States and in interstate commerce.

107.    Consumers have repeatedly confused Telebrands' copycat multiple balloon filling products with ZURU's patented Bunch O Balloons product. The Court previously found that

"Plaintiffs submissions make clear that consumers are not only confused about which product is which, but also mistakenly thinking that the alleged infringing Balloon Bonanza product is Mr. Malone's invention." (Case No. 6:15-cv-00551-RC-JDL, Dkt. 66 at 18.)

108.    The Court also found that the evidence suggested "that consumers may continue to confuse the patented invention and its commercial embodiment, ZURU's Bunch O Balloons, with Telebrands' alleged infringing Battle Balloons products." (Case 6:16-cv-00033-RWS-JDL, Dkt. 99 at 26.)

109.    There is no reason to believe Easy Einstein Balloons will be any different. Due to likely confusion between Bunch O Balloons and Telebrands' multiple balloon-filling products (like Easy Einstein Balloons) by consumers, plaintiffs' reputations and ability to sell their patented product is at risk once it becomes public that the infringing product is unsafe, and, in fact, illegal to sell in the United States.

110.    Plaintiffs are, and will continue to be, damaged and irreparably harmed by Defendants' false and misleading statements, which will continue unless Defendants are enjoined by this Court.

## **REQUEST FOR RELIEF**

WHEREFORE, plaintiffs respectfully request the following relief against Defendants:

A.    A judgment that the '749 Patent, '282 Patent, '612 Patent, and '779 Patent are duly and legally issued, valid, and enforceable;

B.    A judgment holding Defendants liable for infringement of the '749 Patent, '282 Patent, '612 Patent, and '779 Patent;

C.    A temporary restraining order, preliminary injunction, and permanent injunction against Defendants, their officers, agents, servants, employees, attorneys, parent and subsidiary

corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from continued acts of infringement of the '749 Patent, '282 Patent, '612 Patent, and '779 Patent, including without limitation, an injunction against offers for sale and future sales of the infringing product and colorable imitations thereof;

D.      An accounting for damages and an award of compensatory damages resulting from Defendants' infringement of the '749 Patent, '282 Patent, '612 Patent, and '779 Patent, together with pre-judgment and post-judgment interest;

E.      A judgment holding that Defendants' infringement of the '749 Patent, '282 Patent, '612 Patent, and '779 Patent is willful and a trebling of damages pursuant to 35 U.S.C. § 284;

F.      A temporary restraining order, preliminary injunction, and permanent injunction against Defendants, their officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from continued acts of false and misleading statements;

G.      An accounting for damages and an award of compensatory damages resulting from Defendants' false and misleading statements, and a judgment holding Defendants liable for their false advertising;

H.      A judgment holding that this action is an exceptional case and an award to plaintiffs for their attorney's fees and costs pursuant to 35 U.S.C. § 285 and other authority;

I.      A judgment that plaintiffs be awarded their costs incurred herein; and

J.      Such other relief as the Court deems just and equitable.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, plaintiffs hereby demand a trial by jury.

Dated:  March 20, 2017                    Respectfully submitted,

*/s/ Eric H. Findlay*
Eric H. Findlay
State Bar No. 00789886
Debby Gunter
State Bar No. 24012752
Findlay Craft, P.C.
102 N. College Ave, Ste 900
Tyler, TX 75702
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
dgunter@findlaycraft.com

Thomas M. Dunlap (Admitted E.D. Tex./VA Bar No. 44016)
David M. Ludwig (Admitted E.D. Tex./VA Bar No. 73157)
Robert Spendlove (Admitted E.D. Tex./VA Bar No. 75468)
Eric Olavson (Admitted E.D. Tex./VA Bar No. 87872)
Dunlap Bennett & Ludwig PLLC
211 Church Street, SE
Leesburg, Virginia 20175
(703) 777-7319 (t)
(703) 777-3656 (f)
tdunlap@dbllawyers.com
dludwig@dbllawyers.com
rspendlove@dbllawyers.com
eolavson@dbllawyers.com

Cortland C. Putbrese (Admitted E.D. Tex./ VA Bar No. 46419)
Dunlap Bennett & Ludwig PLLC
2307 East Broad Street, Ste. 301
Richmond, Virginia 23223
(804) 977-2688 (t)
(804) 977-2680 (f)
cputbrese@dbllawyers.com

*Counsel for Plaintiffs Tinnus Enterprises, LLC and ZURU Ltd.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document will be served on Defendants via process server along with a Summons issued by the Court.

*/s/ Eric H. Findlay*
Eric H. Findlay