**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| TINNUS ENTERPRISES, LLC and ZURU LTD., <br><br> Plaintiffs, <br><br> v. <br><br> TELEBRANDS CORP., BULBHEAD, LLC, & BED BATH & BEYOND INC., <br><br> Defendants. | Case No.  6:17-cv-170-RWS-JDL |

**DEFENDANTS' SURREPLY TO PLAINTIFFS' MOTION TO STRIKE THE
DECLARATION OF KEITH JELINEK**

Based on his 42 years of industry experience—including direct responsibility for the relevant store operations functions at two major retail chains—Keith Jelinek explains to this Court how major retailers function and how Plaintiffs' story rests on a clear misunderstanding.  Plaintiffs ask this Court to blind itself—not a jury—to that information on various baseless theories.

First, Plaintiffs' contention that disclosure of Mr. Jelinek's testimony is untimely is simply wrong.  Plaintiffs do not respond to our showing that the plain text of Rule 26 applies only to experts who will testify at trial and thus tacitly concede that Rule 26 does not apply to an expert who, like Mr. Jelinek, will not do so.  Instead, Plaintiffs contend that Defendants should have known that Mr. Jelinek's testimony would be required because, before the close of venue discovery, Defendants produced the emails and other documents that, as Mr. Jelinek explains, Plaintiffs have misinterpreted.  That is a *non sequitur*.  Until Defendants got Plaintiffs' briefs, Defendants had no idea that Plaintiffs would present a story based on their *misinterpretation* of those documents and thus had no idea that they would need to offer expert testimony.

1

Second, Plaintiffs miss the point of Defendants' complaint that Plaintiffs did not adequately meet and confer in that they did not ask for the information they claim to want—e.g., Mr. Jelinek's billing rate—before they moved to strike on the grounds that the information was not provided.  Defendants do not deny that the present motion claims to seek that information.  Rather, Defendants' point is that if Plaintiffs had simply asked for it, rather than moving to strike—ostensibly because it was not provided, Defendants would have provided it.  That they did not do so shows that their complaints are pretextual.

Third, there is no serious argument that Mr. Jelinek's testimony is unreliable. Plaintiffs wrongly contend that Mr. Jelinek has provided "no support for his opinions"—i.e., no "relevant examples as comparison," "qualitative analysis," or other "authority."  Dkt. 192 at 4.  But Mr. Jelinek's Declaration amply details the industry experience underlying his opinions, *see* Jelinek Dec. ¶¶ 3, 5, Dkt. 167-4, and courts have routinely found that such experience provides a reliable basis for expert testimony that, like Mr. Jelinek's, explains how an industry or aspect of an industry works. For example, in *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-CV-03181, 2010 WL 4065465, at *13 (S.D. Tex. Oct. 9, 2010), the court concluded that an expert's opinions about "operation, design, and success of convenience stores" were "reliable in that they are based upon [expert's] twenty-five years of experience in the convenience store industry." *Id.* Specifically, the court allowed the expert's opinions on a number of issues, including:

> (1) Plaintiff's plans did not contain "any unique, unusual or original floor plan design elements"; (2) Plaintiff's plans were similar to floor plans used by a convenience store chain called Quik Trip; (3) the Quick Trip convenience store design was not "unique or unusual"; (4) the similarity among Plaintiff's plans, Defendant Morris's plans, Defendant Hermes's plans and Quick Trip's plans meant that the "original source of the design is certainly not unique to Interplan"; (5) general floor plan designs vary only in small ways from chain to chain and store to store; (6) the custom and practice of working with architects in the convenience store industry; and (7) the factors contributing to the success of any given convenience store.

*Id.* The court found that the expert's experience managing daily operations of stores gave him "detailed knowledge regarding the various ways in which convenience stores may be designed, the interior arrangement of elements, and how some design choices are chosen over others," and allowed him to provide "general, non-quantitative opinions regarding the factors that impact a store's performance based upon his years of practical experience in the industry." *Id.*; *see also Sting Soccer Operations Grp. LP v. JP Morgan Chase Bank, N.A.*, No. 4:15-CV-127, 2016 WL 4141118, at *1 (E.D. Tex. Aug. 4, 2016) (rejecting argument that industry expert's testimony regarding commercial reasonableness in the banking industry had no "factual basis" when expert had "sufficient experience in the banking industry to draw conclusions as to commercial reasonableness based on his analysis of the facts"). Mr. Jelinek, likewise, draws on his forty-two years of experience in store operations, which provides a reliable basis for his opinions.

Plaintiff's suggestion that Mr. Jelinek's opinions lack specificity, *see* Reply at 4, is similarly meritless. Throughout his declaration, Mr. Jelinek provides ample detail to pass muster under *Daubert* and its progeny. *See id.* ¶¶ 7-13. The court in *Ergon-W. Virginia, Inc. v. Dynegy Mktg. & Trade*, No. 3:06CV714-DPJ-LRA, 2011 WL 765555, at *7–8 (S.D. Miss. Feb. 25, 2011), for example, considered the admissibility of opinion testimony from "an expert in the natural gas industry," which the plaintiffs (like here) had contended "lack[ed] a reliable basis" because it was "based on experience without providing examples of industry custom or practice as they relate to these issues." *Id.* The court rejected that argument, because the expert "did provide specific custom and practice testimony" by testifying based on his experience that, among other things, "'To say you have to resupply a force majeure agreement is totally outside what the industry would expect or understand. And I don't think you could find any case where that

3

would be the—the position of anyone who actually trades this business on a day-today basis unless it's in their contract and the contract calls for them to resupply.'" *Id.* at 7 (citations omitted).

Similarly, in *Ihde v. HME, Inc.*, No. 4:15-CV-00585-CAN, 2017 WL 3267798, at *5–6 (E.D. Tex. Aug. 1, 2017), this court considered the reliability of an industry expert's "opinions relating to the performance and value of a contract in a particular type of industry based on her review of contract documents, industry standards, and her experience." The court found that "the Expert Report does not suffer from too great an analytical gap between [the expert's] opinions and the bases for same to disqualify [the expert] from testifying." *Id.* And it noted that the expert "references specific industry standards and cites to what she considers relevant portions of the evidence and contracts exchanged between the Parties" and "explains the 'how and why' of her conclusions by applying those industry standards to specific facts in the case." *Id.*

Like the experts in *Ergon-W* and *Ihde*, Mr. Jelinek offers testimony about "specific industry custom and practice," *see* Jelinek Dec. ¶¶ 6-13, "references specific industry standards," *see id.* ¶¶ 6-16, cites "relevant portions of the evidence," *see id.* ¶ 15, and "explains [his] conclusions by applying those industry standards to specific facts in the case," *see id*. ¶¶ 15-18. By any measure, Mr. Jelinek's testimony meets and exceeds the standard for reliability, particularly where courts dealing with challenges like Plaintiffs' have routinely noted that "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." *Sting Soccer*, 2016 WL 4141118, at *1 (quoting *United States v. 14.38 Acres of Land Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1077 (5th. Cir. 1996)). As we showed in our opening brief, Dkt. 182 at 4, this is particularly true where the expert testimony will be heard by a judge and not a jury.

Further, none of the cases Plaintiffs cite for the proposition that an expert must "show his work," Reply at 2-3, resemble this one. *GWTP Investments, L.P. v. SES Americom, Inc.*, No. 3:04-CV-1383-L, 2007 WL 7630459, at *14 (N.D. Tex. Aug. 3, 2007), involved experts who failed to both identify relevant past experiences and compare past experiences with the facts presented. Mr. Jelinek, by contrast, identified his relevant past experiences, Jelinek Dec., Dkt. 167-4, ¶¶ 2-3, and compared his experiences to the facts, *Id.*, ¶¶ 6-16. *Thomas v. City of Chattanooga*, 398 F.3d 426, 431 (6th Cir. 2005), involved an expert who failed to explain "how he drew his conclusions" from his evidence base. Here, Mr. Jelinek explains exactly the specific industry customs and practices that form the basis of his conclusions. *See* Jelinek Dec., Dkt. 167-4, ¶¶ 6-16. Finally, *Swinney v. Schneider Nat'l Carriers, Inc.*, 829 F. Supp. 2d 1358 (N.D. Ga. 2011), involved the technical testimony of a forensic engineer who attempted to reconstruct an accident scene, but failed to specify the "actual testing" he said he conducted and the "data" he said he used. *Id.* The court determined that "general experience in the field of accident reconstruction" was insufficient to provide a reliable basis for the engineering expert's opinion in the absence of that information. *Id.* But Mr. Jelinek is not providing technical testimony based on unidentified "data"; he is providing "general, non-quantitative opinions . . . based upon his years of practical experience in the industry," which he has explained in ample detail. *Interplan Architects*, 2010 WL 4065465, at *13. Thus, Mr. Jelinek has provided a reliable basis for his opinions.

There is, in short, no reason for this Court to ignore Mr. Jelinek's explanation of how the industry he is thoroughly familiar with on the basis of his extensive experience actually works. Plaintiffs' Motion to Strike should be denied.

Dated: November 8, 2017

By: /s/ *Lance Lee*

Gregory Love
Texas Bar No. 24013060
greg@lovetrialfirm.com
107 E. Main Street
Henderson, TX 75652
Tel: (903) 212-4444

D. Michael Underhill
munderhill@bsfllp.com
Jonathan Shaw
jshaw@bsfllp.com
Eric J. Maurer
emaurer@bsfllp.com
Joseph Alm
jalm@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20015
Tel.: (202) 237-2727
Fax: (202) 237-6131

*Attorneys for Defendant Telebrands Corp.*

Lance Lee
Texas Bar No. 24004762
wlancelee@gmail.com
5511 Plaza Drive
Texarkana, TX 75503
Tel: (903) 223-0276

Robert T. Maldonado (admitted *pro hac vice*)
Rmaldonado@cooperdunham.com
Elana B. Araj (*admitted pro hac vice*)
earaj@cooperdunham.com
COOPER & DUNHAM LLP
30 Rockefeller Plaza
New York, New York 10112
Tel: 212-278-0400

*Attorneys for all Defendants*

6

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with notice of the filing of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on November 8, 2017.

/s/ *Gregory P. Love*
Gregory P. Love