IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **TINNUS ENTERPRISES, LLC, ZURU LTD., ZURU INC., ZURU UK LTD., ZURU LLC, ZURU PTY LTD.,** § § § § § § § § § § § § § | | **CIVIL ACTION NO. 6:17-CV-00170-RWS** |
| Plaintiffs, | | |
| v. | | |
| **TELEBRANDS CORPORATION, BULBHEAD.COM, LLC, BED BATH & BEYOND INC.,** | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Bed Bath & Beyond Inc. ("Bed Bath"), Bulbhead.com ("Bulbhead"), LLC, Telebrands Corporation ("Telebrands") (collectively "Defendants") Motion to Transfer Venue pursuant to 28 U.S.C. §1404. (Doc. No. 94.) Plaintiffs filed a response (Doc. No. 116), to which Defendants filed a reply (Doc. No. 125) and Plaintiffs filed a sur-reply (Doc. No. 136). Upon consideration, for the reasons stated herein, Defendants' Motion (Doc. No. 94) is **DENIED**.

## BACKGROUND

Plaintiffs filed their first suit in this Court against Defendants Bed Bath and Telebrands on June 9, 2015, alleging that Telebrands's Balloon Bonanza product infringes U.S. Patent No. 9,051,066 ("the '066 Patent"). (Case No. 6:15-cv-551, Doc. No. 1.) In that action, the Court ultimately granted a preliminary injunction, enjoining the sale of Telebrands's Balloon Bonanza products. (Case No. 6:15-cv-551, Doc. Nos. 66, 84, 91.) On January 24, 2017, the Federal

1

Circuit affirmed the Court's injunction on the '066 Patent. *See Tinnus Enterprises, LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017). That case has since been stayed pending a subsequent appeal of the Patent Trial and Appeal Board's ("PTAB") final written decision to the Federal Circuit. (Case No. 6:15-cv-551, Doc. No. 308.)

On January 26, 2016, Plaintiffs filed a related action against Defendants Telebrands and Bulbhead, alleging Telebrands's Battle Balloons infringe U.S. Patent No. 9,242,749 ("the '749 Patent"), U.S. Patent No. 9,315,282 ("the '282 Patent"). (Case No. 6:16-cv-33, Doc. Nos. 1, 3.) On that same day, Plaintiffs also filed a related suit against Retailer[1] defendants for infringement of the '066, '282, and '749 Patents.[2] (Case No. 6:16-cv-34.) The Court ultimately granted another injunction issued against Defendant Telebrands and the Retailer Defendants. (Case No. 6:16-cv-33, Doc. Nos. 159, 182, 211, 224.). The Federal Circuit recently affirmed the injunctions against Telebrands and the Retailers. *Tinnus Enterprises, LLC et al. v. Telebrands Corp. et al*, Nos. 2017-1175, 2017-1760, 2017-1811 (Fed. Cir. Jan. 16, 2018). On November 14, 2017, this Court tried both of these actions to a jury verdict. Trial proceedings were held over the course of seven days, and on November 21, 2017, the jury returned a verdict finding that Telebrands infringed the '749 and '282[3] Patents, that the '749 and '282 Patents were valid, and that infringement was willful. (Case No. 6:16-cv-33, Doc. No. 544.) Post-trial proceedings for those actions are currently ongoing.

During the pendency of Case Nos. 6:16-cv-33 and 6:16-cv-34, on March 20, 2017, Plaintiffs filed the instant action alleging that Telebrands's Easy Einstein Balloons infringe the

---

[1] Retailer Defendants are: Bed Bath, Fry's Electronics, Kohl's Department Stores Inc, Sears Holding Corporation, The Kroger Company, Toys "R" Us-Delaware, Inc., Wal-Mart Stores Inc., and Walgreens Boots Alliance, Inc. (collectively the "Retailers").
[2] The claims regarding the '066 Patent as to the Retailers have since been severed and stayed at the request of the parties pending the appeal of the PTAB's final written decision. Case No. 6:16-cv-33, Docket No. 256.
[3] Telebrands stipulated to infringement of the '282 Patent.

'749 Patent, the '282 Patent, U.S. Patent No. 9,527,612 ("the '612 Patent"), and U.S. Patent No. 9,533,779 ("the '779 Patent"). (Doc. No. 1.) At that time, Telebrands's Easy Einstein Balloons were already on the market and Plaintiffs moved for an *ex parte* temporary restraining order ("TRO") and preliminary injunction. (Doc. No. 5.)

On March 28, 2017, the Court held a contested evidentiary hearing on the TRO and preliminary injunction in this action. The Court denied Plaintiffs' application for a TRO, but set the preliminary injunction on an expedited briefing schedule and set an additional evidentiary hearing. (Doc. No. 28.) Plaintiffs filed a motion for preliminary injunction on April 3, 2017 (Doc. No. 41), and the Court held a second contested evidentiary hearing on April 12, 2017. The Court granted the preliminary injunction on May 19, 2017. (Doc. No. 89.) Recently, the Federal Circuit affirmed the Court's injunction. *Tinnus Enterprises, LLC et al. v. Telebrands Corp. et al*, No. 2017-2194 (Fed. Cir. Jan. 16, 2018). Although venue was not contested during the injunction proceedings in this matter, Defendants filed a motion to dismiss for improper venue as to Plaintiffs' amended complaint (Doc. No. 74) on May 26, 2017. (Doc. No. 90.) On that same day, Defendants filed the instant motion to transfer the remainder of this action to the District of New Jersey. (Doc. No. 94.)

**LEGAL STANDARD**

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C.

§ 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## DISCUSSION

As an initial matter, Defendants' Motion is entirely contingent on the Court dismissing the claims against Telebrands and Bulbhead for improper venue. (Doc. No. 94, at 1.) Because the Court has issued a contemporaneous recommendation that Defendants' Motion to Dismiss for improper venue (Doc. No. 156) be denied, this Motion should be denied as well. However, even considering the convenience factors, there is no showing that this action would be clearly more convenient in the District of New Jersey. Indeed, in the first action brought before this Court

(6:15-cv-551) Defendants Telebrands and Bed Bath brought this exact same motion before the Court and, considering the convenience factors, the Court denied transfer. (Case No. 6:15-cv-551, Doc. Nos. 57, 83.) That decision was later affirmed by the Federal Circuit. *In re Telebrands Corp.,* No. 2016-106 (Fed. Cir. Feb. 24, 2016). Since that time, the circumstances have not significantly changed other than this Court's increased familiarity with the parties and the allegations and the expenditure of judicial resources in these matters.

    a. **The Private Interest Factors**

        *i. The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer. *Genentech*, 566 F.3d at 1345. As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). To meet its burden, Defendants must identify their sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties. *In re Apple,* 743 F.3d 1377, 1379 (Fed. Cir. 2014); *see also Invitrogen v. Gen. Elec. Co.,* No. 6:08–CV–113, 2009 WL 331889 at *3 (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

Through their declarations, Telebrands does not identify the location of its documents and simply provides attorney argument that documents related to the design, manufacturing, marketing, and sales of the Easy Einstein Balloons are located in the District of New Jersey.

5

(Doc. No. 94-1, Declaration of Bala Iyer "Iyer Decl." at ¶¶ 1–6.) Indeed, in his declaration, Mr. Iyer simply identifies the principal places of business of Telebrands and Bulbhead and states that he would testify if called. *Id*. Bed Bath contends that documents related to its purchasing of Easy Einstein Balloons, sales, customer reviews, store placement, and financial information are all located in New Jersey. (Doc. No. 94-2, Declaration of Scott Hames "Hames Decl." at ¶¶ 4–5.) Plaintiffs' declarations identify documents, including the documents related to conception and reduction to practice, prototypes, sales and financial documents located in Plano, Texas. (Doc. No. 116-2, Declaration of Josh Malone "Malone Decl." at ¶ 11.) Plaintiffs also identify prosecution documents located in Texas as well as documents in the possession of Defendants' witness Kendall Harter located in Texas. *Id.* at ¶ 6; Doc. No. 116-3 Declaration of Cortland Putbrese "Putbrese Decl." at ¶ 2. Plaintiffs also identify documents of its experts located in Texas, Minnesota, and Illinois. Malone Decl. at ¶¶ 12–14.

Here, the Court can give little weight to Defendants' attorney argument regarding the location of its sources of proof. Indeed, Telebrands has not provided a declaration asserting the location of its sources of proof. While Bed Bath identifies certain of its documents located in New Jersey, weighing the location of those documents against the specific identification of documents relevant to this litigation identified by Plaintiffs that are located in this District, the Court finds this factor is neutral.

### ii. *The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See In re Volkswagen II*, 545 F.3d at 316. The Court gives more weight to those specifically identified witnesses and affords less

6

weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D.Tex Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *see also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

For this factor, Defendants identify seven individuals in New Jersey and eight located in New York, most of whom are retail buyers, analysts, or distributors. (Doc. No. 94, at 4–6.) Plaintiffs identify eight third-parties who are in or near this District, including the wife of the inventor of the asserted patents who has knowledge of the invention process and timeline, two prosecuting attorneys with knowledge related to the prosecution of the patent application, and Kendall Harter who has been listed as a trial witness by Telebrands. (Doc. No. 116, at 7–8.)

Here, the parties have listed witnesses in and around each forum without stating the importance of their testimony or providing a good faith basis that they intend to call them at trial. *See Adaptix, Inc. v. Cellco Partnership*, No. 6:15-cv-45 (E.D. Tex. Aug. 12, 2015) (Doc. No. 32, at 7) ("when parties simply name third-party witnesses subject to the subpoena power of a particular court without identifying the nature of the testimony or asserting, on a good faith basis, whether a party intends to depose or call a witness to trial, analysis of this factor is a futile and pointless exercise."). This failure is particularly concerning given that not one of the listed individuals testified at trial during the 6:16-cv-33 and 6:16-cv-34 cases. Thus, the Court has difficulty placing stock into the attorney assertions in the briefing as to the convenience of trial for relevant third-party witnesses. Even if the Court could afford these witnesses significant weight in its transfer analysis, there is a nearly equal amount of individuals located in New Jersey as there are in this District. Accordingly, this factor is neutral.

### iii. The Cost of Attendance for Willing Witnesses

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

With regard to willing witnesses, Defendants identify thirteen willing witnesses in New Jersey. (Doc. No. 94, at 7.) Plaintiffs contend there are at least nine potential witnesses located in Texas, and at least five willing witnesses who are located outside of this District for whom this District would not be more inconvenient. (Doc. No. 116, at 10–11.)

Again, while the Court affords the most weight to those witnesses who are specifically named, the Court has difficulty deciphering the relevance or importance of many of these witnesses from the parties' briefing. While Defendants have named four witnesses who actually testified at trial in the related matters, Plaintiffs have identified only the inventor, Josh Malone. Considering the remainder of the witnesses would amount to speculation regarding the convenience for trial for individuals listed who simply happen to be located in or nearer to one district or the other or are otherwise willing to travel. Thus, on balance, the Court finds this factor weighs only slightly in favor transfer.

### iv. Other Practical Problems

#### 1. *Judicial Economy*

Although judicial economy is not among the list of the enumerated factors, it can be a consideration when determining whether a transfer is in the interest of justice. *Volkswagen II*, 565 F.2d at 1351. Defendants contend that judicial economy weighs in favor of transferring this case to New Jersey because Defendants believe that the action as to Telebrands is only proper in New Jersey. However, as discussed above, and in the Court's contemporaneous opinion, venue is proper in this District. Plaintiffs argue that this Court's familiarity with the parties, products, patents, and claims strongly weigh against transfer where the District of New Jersey has no familiarity with the patent claims. (Doc. No. 116, at 13–14.)[4]

Here, at the time Defendants' Motion was filed, the Court had two related actions which were nearing trial (6:16-cv-33, 6:16-cv-34) and one action that was stayed pending appeal (6:15-cv-551). Notably, the Court's involvement in and familiarity with these actions is unique given the issuance of injunctions and management of those injunctions. Indeed, these actions are not simply related, but are continuations of each prior action resulting from Defendants' design-around based on this Court's orders. Specifically in this case, the Court had already held extensive injunction proceedings by the time the instant motion was filed and currently has an injunction in place. Transferring the case to the District of New Jersey, a forum that has no familiarity with the patents-in-suit or the Court's injunction, would be inefficient. Moreover, it would require the court in New Jersey to enforce and monitor this Court's injunction. Such monitoring is inevitable given that there is a currently pending motion to modify the Court's injunction (Doc. No. 135) for which this Court has already held a lengthy hearing. Given the

---

[4] Defendants contend that the Court in New Jersey has familiarity with the Lanham Act claims, but only generically identify the parties' marketing messages as the factual overlap. (Doc. No. 94, at 10.) The Court finds this unpersuasive to warrant transfer to the District of New Jersey, where the primary asserted claims in this action are for patent infringement.

unique circumstances of this action and the related actions before this Court, this factor weighs against transfer.

### b. The Public Interest Factors

The parties agree that the public interest factors are neutral, aside from local interest considerations.

#### i. *The Local Interest in Having Localized Interests Decided at Home*

Defendants argue that the local interest in having disputes decided at home favors transfer to New Jersey because all of the Defendants have a principal place of business in New Jersey. (Doc. No. 94, at 10.) Plaintiffs contend that the local interest strongly favors keeping the case in this District because the inventor of the patent-in-suit lives and works in this District, all of the research and development that went into his invention of Plaintiffs' Bunch O Balloons product occurred in this District, and the initial marketing, order placing, and selling of that product occurred in this District. (Doc. No. 116, at 14.) Again, Defendants fail to point to any specific local interest other than the mere location of Defendants in New Jersey. Defendants do not, for example, identify any employees whose reputations or work would be called into question as it relates to this action. Plaintiffs, on the other hand, have identified the inventor of the patent-in-suit who lives and works in this District, and whose invention of the Bunch O Balloons will be directly called into question in this litigation. *See Hoffman-La Roche*, 587 F.3d at 1336 ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."); *Eon Corp. IP Holdings, LLC v. Sensus, USA Inc.*, No. 2:10-cv-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012). Accordingly, this District has a strong local interest in the instant action and this factor weighs against transfer.

## ii. The Remaining Public Interest Factor

As there are no conflicts to avoid, the remaining public interest factor is neutral.

## CONCLUSION

In sum, Defendants have failed to meet their burden to show the District of New Jersey is clearly more convenient. On balance, the majority of factors were neutral, while only the convenience of witnesses weighed slightly in favor of transfer and both the practical considerations and local interest weighed against transfer. Thus, for the reasons stated herein, Defendants' Motion (Doc. No. 94) is **DENIED**.

**So ORDERED and SIGNED this 9th day of March, 2018.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE