**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| TINNUS ENTERPRISES, LLC and ZURU LTD., | |
| Plaintiffs, | Case No. 6:17-cv-170-RWS-JDL |
| v. | **FILED UNDER SEAL** |
| TELEBRANDS CORP., BULBHEAD, LLC, & BED BATH & BEYOND INC., | |
| Defendants. | |

**DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE (DKT. 255) REGARDING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT FOR IMPROPER VENUE**

**TABLE OF CONTENTS**


1. Telebrands Has No Physical Place Of Business In This District........................................ 1

2. Pallets And Holiday Table Displays Are Sporadic, Not Regular And Established............ 2

3. [REDACTED] ........................................................................................................ 3

4. Telebrands Does Not Hold Out ASOTV Sections In Retail Stores As Its Own................. 4

5. [REDACTED] Determines Where Pallets Are Placed In Its Stores............................................. 6

6. Telebrands Did Not Forfeit Its Venue Defense .................................................................. 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cao Lighting, Inc. v. Light Efficient Design and Elec. Wholesale Supply Co., Inc.*,
No. 4:16-cv-00482-DCN, 2017 WL 4556717 (D. Idaho Oct. 11, 2017)....................................2

*In re Cray*,
871 F.3d at 1363 ....................................................................................................1, 2, 3, 5, 6

*Cutsforth, Inc v. LEMM Liquidating Co., LLC*,
No. CV 12-1200, 2018 WL 847763 (D. Minn. Feb. 13, 2018) ..............................................8

*Dow Chem. Co. v. NOVA Chems. Corp. (Canada)*,
803 F.3d 620 (Fed. Cir. 2015)...............................................................................................8

*Galderma Laboratories LP et al v. Actavis Laboratories UT Inc et al*,
No. 3:17-cv-01076-M, Dkt. 60 (N.D. Tex. Nov. 17, 2017)....................................................2

*Genesis Health Care, Inc. v. Soura*,
No. 3:16-CV-03376-CMC, 2017 WL 698610 (D.S.C. Feb. 22, 2017) ..................................8

*Knapp-Monarch Co. v. Casco Prods. Corp.*,
342 F.2d 622 (7th Cir. 1965) ..................................................................................................3

*McDaniel v. IBP Inc.*,
89 F. Supp. 2d 1289 (M.D. Ala. 2000) ..................................................................................8

*McLaughlin v. Holder*,
864 F. Supp. 2d 134 (D.D.C. 2012).......................................................................................8

*Remington Rand Bus. Serv. v. Acme Card Sys. Co.*,
71 F.2d 628 (4th Cir. 1934) ....................................................................................................3

*Texas Pac. Coal & Oil Co. v. Fox*,
228 S.W. 1021 (Tex. Civ. App. 1921)....................................................................................4

*Tips v. United States*,
70 F.2d 525 (5th Cir. 1934) ....................................................................................................4

*West View Research, LLC v. BMW of North America, LLC*,
No. 16-cv-2590, Slip Op., Dkt. 64-1 (S.D. Cal. Feb. 5, 2018) ..............................................2

*Zuru Inc. v. Ontel Products Corp.*,
Case No. 6:18-cv-00132 (E.D. Tex.) (complaint filed March 20, 2018)...............................1

Defendants object to the Magistrate Judge's R&R to deny Telebrands' Motion to Dismiss (Dkt. 156). Telebrands and Bulbhead (together "Telebrands") have no regular and established place of business in this District. Telebrands supplies products to distribution centers of retailers like [redacted], who decide which stores stock them. Defendants did not forfeit their venue objection, timely raising the issue repeatedly. The District Court should reject the R&R and dismiss.[1]

**1. Telebrands Has No Physical Place Of Business In This District.**

The R&R states that Defendants did not dispute that they have a physical place in the district. (Dkt. 255 at 9.) This is incorrect. (*See, e.g.,* Dkts. 156 at 2 ("Telebrands and Bulbhead have never had a place of business or any facility of any sort…in the Eastern District of Texas."); *id.* at 5-7 ("Neither Telebrands nor Bulbhead 'has a regular and established place of business' in this district.…In fact, neither has *any* place of business here." (Original emphasis)); Dkt. 156-1 at ¶¶ 5, 16; 167 at 2, 7-13.). This evidence was uncontradicted. (Dkt. 156-1, ¶¶ 5, 16.)

Defendants object to the R&R's assertion that there are "numerous physical locations in this District where Defendants carry out their business, including the sale of the alleged infringing products." (Dkt. 255 at 9). The uncontradicted evidence is that Defendants sell wholesale to retailers, and that the retailers—not Defendants—sell the products to the public from their stores. (Dkt. 156-1, ¶ 18.) Although Defendants' products may be found in retail stores in this District, *Cray* (issued a few days after Defendants filed their motion) confirmed that merely "doing business" in a district does not suffice for venue. Venue lies only if there is "a physical, geographical location in the district *from which the business of the defendant is carried out*." 871 F.3d 1355, 1362 (Fed. Cir. 2017) (emphasis added). A retail store such as a [redacted] is not transformed into Defendants' place of business because they may benefit from, and on occasion

[1] Plaintiffs already are using the R&R as a basis to assert venue improperly in suits against other companies having no regular and established place of business in this District. *See Zuru Inc. v. Ontel Products Corp.*, Case No. 6:18-cv-00132-RWS (E.D. Tex.) (March 20, 2018 complaint).

work with third-parties to monitor or facilitate, a retailer's sale of products.[2] The R&R erred in ruling that the sale of Telebrands' products by retailers within this District creates a physical place of business of Telebrands. An illustrative case is *West View Research, LLC v. BMW of North America, LLC*, No. 16-cv-2590, Slip Op., Dkt. 64-1 at 11-16 (S.D. Cal. Feb. 5, 2018), which found no patent venue over BMW North America despite its exercising stringent control over all aspects of its dealership's operations pursuant to express contractual terms, finding that the dealerships were separate, albeit related, corporations. *Id.*[3] Here, retailers like [REDACTED] are separate corporations unrelated to Telebrands. (Dkt. 233 at 1-3.)

**2. Pallets And Holiday Table Displays Are Sporadic, Not Regular And Established.**

The R&R incorrectly asserts that Defendants did not dispute *Cray*'s "regular and established" prong "other than to argue that shipment of products to this District did not constitute a 'regular and established place of business.'" (Dkt. 255 at 9). In addition to the arguments above, Defendants' presented undisputed evidence that holiday tables and pallets where their products may appear are not "regular and established" because they are neither continuous nor fixed. "[T]he place in question must be settled certainly, or fixed permanently" and cannot be "transient." *In re Cray*, 871 F.3d at 1363 (internal quotation marks omitted). "[S]poradic activity cannot create venue." *Id.* at 1362. (Dkt. 233 at 11, 13-14.) The R&R incorrectly relied on retailers' transient sale of products on pallets and holiday tables across the country as a regular and established

---

[2] The R&R incorrectly states Telebrands admitted to "conducting business at [REDACTED] and other retail locations in this District." (Dkt. 255 at 9 (citing Dkt. 222-4 at 7.) Telebrands admitted only that its "product has been sold" by retailers in sections of their stores. (Dkt. 222-4 at RFA 7.)

[3] *See also, e.g.*, *Cao Lighting, Inc. v. Light Efficient Design and Elec. Wholesale Supply Co., Inc.*, No. 4:16-cv-00482-DCN, 2017 WL 4556717 (D. Idaho Oct. 11, 2017) (finding no regular or established place of business where defendant's 17 distributors in the state were obligated to stock the defendant's products and display its marketing materials, but at physical locations of the distributors, not the defendant), *cited by Galderma Laboratories LP et al v. Actavis Laboratories UT Inc et al*, No. 3:17-cv-01076-M, Dkt. 60, at 20-21 (N.D. Tex. Nov. 17, 2017).

place of business in this District. The record demonstrates that:

- **Pallets.** ██████ uses pallets in all departments in all stores nationwide and not just for ASOTV or Telebrands. (Dkt. 233 at 5.) ██████ selected only a few of Telebrands' products for pallets features, which were present in ██████ stores for limited times, from a couple of weeks to three months per year. (*Id.* (citing Dkt. 234-17).)
- **Holiday Tables/Cubes.** ██████ uses "holiday tables" around Thanksgiving and Christmas. (Dkt. 233 at 6.) Holiday tables are stocked with goods of many companies, not just Telebrands. (*Id.*) ██████ sets up off-the-shelf displays during the summer. (*Id.*)

The R&R also incorrectly focused on Telebrands' "relationships" with retailers (Dkt. 255 at 9-10), rather than whether it has a regular and established place of business in the District.[4]

Defendants object to the R&R's reliance on "zero-sales" projects, which are pallet-specific projects and similarly sporadic. The record reflects that Telebrands may sometimes, but "not always," ask a service provider to investigate a store with "zero sales," subject to ██████ approval due to ██████ "complete control over its own stores." (Dkt. 233 at 6.) The R&R incorrectly characterizes these sporadic efforts as "ongoing and continuous" (Dkt. 255 at 9-10), and erroneously concludes that ██████ pallets and ██████ holiday tables are regular and established places of business of Telebrands.

**3.** ██████████████████████

The R&R incorrectly concludes that "payment made for premium shelf placement at ██████" is tantamount to Telebrands' "leasing" space within ██████ stores or is otherwise equivalent to having a regular and established place of business within ██████. (*Id.* at 9, 11-

---

[4] The R&R cites *Remington Rand Bus. Serv. v. Acme Card Sys. Co.,* 71 F.2d 628, 629 (4th Cir. 1934), (Dkt. 255 at 8-9), which supports the opposite conclusion. The *Rand* defendant leased a showroom in the district for five years, where it stocked its goods and from which its employees sold directly to customers. *Id.* at 629-630. In *Cray*, the Federal Circuit contrasted *Rand* with *Knapp-Monarch Co. v. Casco Prods. Corp.*, 342 F.2d 622, 624-25 (7th Cir. 1965), which held that the defendant had no regular and established place of business in the district even though, "for many years" it had, among other things, rented space twice each year at trade shows where it displayed and sold its products.



12.) First, Telebrands does not pay for shelf space at [redacted]; rather, [redacted]. (Dkt. 233 at 6; Dkt. 233-2, ¶ 7.) Second, [redacted] expressly affirmed that [redacted]. (Dkt. 233 at 2; Dkt. 233-2, ¶¶ 4-5.) [redacted] attested that [redacted]. (Dkt. 233-2, ¶¶ 4-5, ¶¶ 7-9.) Mr. Bianco also corrected testimony repeating "lease" from the question, stating that Telebrands does not lease space at [redacted] or any other retailer. (Dkt. 233 at 1-2, citing Dkt. 233, Ex. 11, 12.) The R&R also errs in treating a payment for a position on a display as a "lease" of property. *See, e.g., Tips v. United States*, 70 F.2d 525, 526-27 (5th Cir. 1934) ("A tenancy involves an interest in the land passed to the tenant and a possession exclusive even of the landlord except as the lease permits his entry."); *Texas Pac. Coal & Oil Co. v. Fox*, 228 S.W. 1021, 1023 (Tex. Civ. App. 1921) ("A 'lease' is more than a mere license to occupy land."). There is also no evidence of any holiday display ever having been stocked exclusively with Telebrands' products. [redacted] holiday tables cannot be a regular and established place of business of Telebrands. (Dkt. 233 at 11-13.)

**4. <u>Telebrands Does Not Hold Out ASOTV Sections In Retail Stores As Its Own.</u>**

Defendants object to the R&R's conclusion that "the evidence shows that Defendants hold [ASOTV sections] out as their own, pay fees to construct the space in retail stores, and control product placement for these spaces." (Dkt. 255 at 12-13.) The uncontradicted evidence is to the contrary. Photographs of the "off-the-shelf" ASOTV displays referenced in the R&R (Dkt. 255 at 13 (citing Dkt. 222-30)) confirm that only some of the displayed products are Telebrands'. [redacted] testified that [redacted] displays products from [redacted] different ASOTV vendors. (Dkt.

233 at 2.) Moreover, the merchandising companies at [REDACTED] divide the total costs associated with building the [REDACTED] ASOTV modular among all ASOTV vendors, apportioned by each vendor's "linear inches, total representation of the [modular] across the number of stores that the [modular] are in." (*Id.* at 4.)[5] [REDACTED] similarly charged all of its ASOTV vendors a one-time fee to construct ASOTV displays, which include Telebrands' and many other vendors' products. (*Id.* at 3, n. 7.) The record shows that all ASOTV vendors, including Telebrands, pay a fee to defray certain costs of the retailers for stocking modulars with products belonging to the retailer or constructing temporary displays whose contents and locations the retailer determines exclusively. (*Id.* at 1-6.) The evidence does not support the conclusion that it is Telebrands that pays to have ASOTV sections built in stores, much less that it owns, leases, or operates them.

To the extent that the R&R relies on the trial testimony of Arline Wall (a casual reference to "our" ASOTV section) as evidence that Telebrands holds out the retailers' stores as its own, her testimony was quickly clarified at trial and in a declaration and, in any event, says nothing about representations to the public. (Dkt. 233 at 3, n. 8; Dkt. 233-3, ¶ 6.) The R&R also does not account for the fact that it is the retailers, not Telebrands, who site their stores in this District, can move or close them without Telebrands' approval, and choose whether to have an ASOTV section. (Dkt. 233 at 2-4.). *Cray*, 871 F.3d at 1355 ("if an employee can move his or her home out of the district at his or her own instigation, without the approval of the defendant, that would cut against the employee's home being considered a place of business of the defendant.").

The evidence also establishes that the retailer, not Telebrands, controls both store selection and the placement of product in its stores' ASOTV sections. Retailers select products based

---

[5] [REDACTED] use of the phrase "ownership percentage" in an e-mail to Telebrands was in reference to the apportionment of fees among the many ASOTV suppliers that [REDACTED] serviced, not actual ownership of shelves; Telebrands had no right to any shelf space at [REDACTED]. (Dkt. 233 at 4 & n. 10).

on consumer demand. (*Id.* at 3, 6-7.) After Telebrands and other vendor products are delivered to its distribution centers, [redacted] alone decides which stores receive them and where they display them, including where, exactly, within the ASOTV section. (*Id.* at 3, 14 (citing Dkt. 234-20 at 29:7-30:11.) For example, when [redacted] build an ASOTV modular at [redacted], they must comply with a "blueprint" created by the [redacted] that details which products go where. (*Id.*) Telebrands does not determine where its products are placed in [redacted] stores; that is [redacted] exclusive domain. (*Id.* at 1-6.) Neither [redacted] can guarantee Telebrands any specific placement of its products within [redacted] stores. (*Id.* at 3-5.) Moreover, the R&R's conclusion that the ASOTV logo converts ASOTV store sections into Telebrands' places of business, (Dkt. 255 at 12) is inconsistent with the regular use of the public domain ASOTV logo by other vendors. (Dkt. 233 at 3.) The record rebuts the R&R's conclusion that [redacted] ASOTV sections in its stores are Telebrands' places of business. Just as promotional activities do not suffice for venue, a retailer's decision to sell a product in its stores cannot create a regular and established place of business for the manufacturer. *Cray*, 781 F.3d at 1363.

**5. [redacted] Determines Where Pallets Are Placed In Its Stores**

Defendants object to the R&R's conclusion that Telebrands' use of third parties [redacted] to help [redacted] execute *its* product placement decisions creates a regular and established place of business for Telebrands in all [redacted] stores nationwide. (Dkt. 255 at 13-14.) The uncontradicted evidence is that [redacted] alone determines product placement. (Dkt. 233 at 1-6.) For each store, [redacted] decides which ASOTV product or pallet, if any, will be used and where. (*Id.* at 6.) [redacted] also requires that its vendors use merchandising companies to ensure the success of their pallet promotion. (*Id.*) Although a [redacted] from the [redacted] shows where it has authorized the placement of the pallet in the store, a pallet can only be moved to that area with the store manager's permission. (*Id.*)

[REDACTED] alone determines where the pallets are placed in its stores. (*Id.* at 1-6.) The record is inconsistent with the R&R's conclusion that Telebrands' controls the placement of its pallets in [REDACTED] stores or that of any retailer.[6]

**6. Telebrands Did Not Forfeit Its Venue Defense**

Defendants object to the R&R's conclusion that Telebrands forfeited its venue defense. Defendants moved to dismiss on the basis of improper venue in anticipation of the decision in *TC Heartland* and moved again just four days after that decision. (Dkts. 68, 90).[7] Defendants also stated during injunctive proceedings that they did not concede venue (Dkt. 22), and filed a motion to dismiss, (Dkt. 68), nearly a month *before* the PI opinion issued. The R&R's statement (Dkt. 255 at 17-18) that Defendants did not oppose venue during TRO and PI proceedings, but instead, waited until a week *after* this Court issued its PI opinion is not consistent with the record. Telebrands is not aware of any case finding forfeiture when a motion was filed that soon after *TC Heartland,* in circumstances like this case.

Defendants also object to the R&R's reliance on events in other cases as justifying a forfeiture of a venue defense by treating the injunction in this case as a "continuation" of other cases, even cases in which venue was contested. See 6:15-cv-551 (Dkt. 311); 6:16-cv-0033 (Dkt. 298). In any event, this lawsuit involves different products and added patents. The cases confirm

---

[6] The R&R also incorrectly relied on Telebrands' [REDACTED]. (Dkt. 255 at 14-15.) Telebrands [REDACTED]. (Dkt. 167-3 at ¶ 28.) In any event, even if [REDACTED], this at best may reflect a degree of control over the products, not control over the retailer's store.

[7] The Magistrate Judge held, three days before the Court's PI Opinion issued, that the motion to dismiss Plaintiffs' original complaint was mooted by Plaintiffs' amended complaint. (Dkt. 80.) Telebrands quickly reaffirmed (consistent with their statement in their very first filing in this case, (Dkt. 22)), that Defendants were contesting venue based on *TC Heartland.* (Dkt. 90.)

that even consent to venue in one case is not a waiver in related cases.[8]

Defendants also object to the extent that the R&R suggests that venue should be deemed waived here because Defendants allegedly resisted Plaintiffs efforts to include Easy Einstein in the 6:16-cv-33 case. (Dkt. 255 at 17.) Plaintiffs never tried to include Easy Einstein in that case. Instead, they chose to file a new case accusing it, just as they filed a new case against Battle Balloons rather than amending the Balloon Bonanza case. Plaintiffs asserted new patents against a product introduced after the filing of other cases. *See Dow Chem. Co. v. NOVA Chems. Corp. (Canada)*, 803 F.3d 620, 626 (Fed. Cir. 2015). Moreover, Plaintiffs tactically sought an *ex parte* TRO and PI on the grounds that no counsel had appeared for Defendants *in this just-filed case,* (Dkt. 5 at 30), an approach that would not have been possible if Plaintiffs had accused the Easy Einstein product in the 6:16-cv-33 case. No case supports the notion that the pendency of other cases—even related ones—in a district or a court's experience in related cases justifies overriding a Defendants' right to proper venue in a new case. In fact, at least one court has rejected such an argument. *See Cutsforth, Inc v. LEMM Liquidating Co., LLC*, No. CV 12-1200 (SRN/LIB), 2018 WL 847763, at *4 n.3 (D. Minn. Feb. 13, 2018) (recognizing that overriding defendant's venue rights and finding forfeiture would likely exceed limits on court's powers).

* * *

Defendants object to the R&R. Defendants request that the Court decline to adopt the Magistrate Judge's Recommendation and grant Defendants' motion to dismiss.

---

[8] *See, e.g., Genesis Health Care, Inc. v. Soura*, No. 3:16-CV-03376-CMC, 2017 WL 698610, at *4 n. 4 (D.S.C. Feb. 22, 2017) (Plaintiff has not "directed the court to any authority in support of the necessary premise that waiver of a forum selection clause in one action constitutes waiver in a future, related action."); *McLaughlin v. Holder*, 864 F. Supp. 2d 134, 137, 139–41 (D.D.C. 2012) (plaintiff "cites no authority… supporting the position that considering the status of related cases or judicial economy is an appropriate exercise when determining" venue); *McDaniel v. IBP Inc.*, 89 F. Supp. 2d 1289, 1293 (M.D. Ala. 2000) (venue not established by party's consent to venue in another case on different claims).

Respectfully submitted,

Dated: March 23, 2018

By: /s/ *Lance Lee*

Lance Lee
Texas Bar No. 24004762
wlancelee@gmail.com
5511 Plaza Drive
Texarkana, TX 75503
Tel: (903) 223-0276

Gregory Love
Texas Bar No. 24013060
greg@lovetrialfirm.com
107 E. Main Street
Henderson, TX 75652
Tel: (903) 212-4444

Morgan Chu
mchu@irell.com
Richard Birnholz
rbirnholz@irell.com
Grace Chuchla
gchuchla@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Tel: 310-203-7000

D. Michael Underhill
munderhill@bsfllp.com
Eric J. Maurer
emaurer@bsfllp.com
Stacey Grigsby (admitted pro hac vice)
sgrigsby@bsfllp.com
William Bloom (admitted pro hac vice)
wbloom@BSFLLP.com
Joseph Alm
jalm@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
Tel.: (202) 237-2727
Fax: (202) 237-6131

Attorneys for Defendant Telebrands Corp.

Robert T. Maldonado
Rmaldonado@cooperdunham.com
Elana B. Araj
earaj@cooperdunham.com
Laura A. Alos
lalos@cooperdunham.com
COOPER & DUNHAM LLP
30 Rockefeller Plaza
New York, New York 10112
Tel: 212-278-0400

*Attorneys for all Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with notice of the filing of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on March 23, 2018.

/s/ *Lance Lee*
Lance Lee

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal by the Motion for Leave to File Under Seal filed in this case (Dkt. 262).

/s/ *Lance Lee*
Lance Lee