IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| TINNUS ENTERPRISES, LLC, ZURU LTD., ZURU INC., ZURU UK LTD., ZURU LLC, ZURU PTY LTD., | § § § § § § § § § § § § | CIVIL ACTION NO. 6:17-CV-00170-RWS |
| Plaintiffs, | | |
| v. | | |
| TELEBRANDS CORPORATION, BULBHEAD.COM, LLC, BED BATH & BEYOND INC., | | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

This claim construction opinion construes the disputed claim terms in U.S. Patent Nos. 9,315,282 ("the '282 Patent") and 9,242,749 ("the '749 Patent") (collectively "the patents-in-suit"). Plaintiffs Tinnus Enterprises, LLC, ZURU Ltd., ZURU Inc., ZURU UK Ltd., ZURU LLC, and ZURU Pty. Ltd. ("Plaintiffs") allege that Defendants Telebrands Corp., Bulbhead.com, LLC, and Bed Bath & Beyond ("Defendants") infringe certain claims of the '282 and '749 Patents. This Court has previously construed claim terms of the patents-in-suit between the parties, for which the parties agree the Court's prior constructions are applicable. *See* Case No. 6:16-cv-33, Doc. Nos. 200, 201, 225, 226. At the scheduling conference in this matter, Defendants therefore identified only one term ripe for construction by the Court—"automatically sealing…upon detachment." May 15, 2018 Tr. at 16:7–17:24. Thereafter, Defendants further identified the term "fluid" for construction and the Court allowed additional briefing. (Doc. Nos. 303, 306.) Plaintiffs disagreed that any further construction was necessary for any claim terms in

1

this matter. (Doc. No. 304.) Plaintiffs filed an opening claim construction brief (Doc. No. 316), to which Defendants filed a responsive brief (Doc. No. 320), and Plaintiffs filed a reply (Doc. No. 322.) Upon consideration of the parties' arguments, and for the reasons stated herein, the Court adopts the constructions set forth below.

## OVERVIEW OF THE PATENTS

Plaintiffs contend that Telebrands's Easy Einstein Balloon products literally infringe certain claims of the '749 and '282 Patents. This Court has previously issued an order construing certain claim terms of the related '066 Patent, (6:15-cv-551 Doc. Nos. 181, 200), as well as an order construing claims terms of the patents-in-suit (Case No. 6:16-cv-33, Doc. Nos. 200, 201, 225, 226). All three patents are related and share a common specification. By way of background, the '282 Patent is entitled "System and Method for Filling Containers with Fluids." '282 Patent. The disclosure of the '282 Patent relates generally to fluid inflatable systems and more particularly, to a system and method for filling containers with fluids. '282 Patent at 1:22–24. The stated objective of the invention is to fill more than one container, such as balloons, simultaneously to save time and avoid potential damage to the containers. '282 Patent at 1:28–44. The '282 Patent contains one independent claim, claim 1, which recites:

> 1. An apparatus comprising:
> a housing comprising an inlet and a plurality of outlets;
> a plurality of hollow tubes, each hollow tube attached to the housing at a respective one of the outlets;
> a plurality of containers, each container removably attached to a respective one of the hollow tubes;
> and a plurality of elastic fasteners, each elastic fastener clamping a respective one of the plurality of containers to a respective tube, and each elastic fastener configured to restrict detachment of its respective container from its respective tube and to automatically seal its respective container upon detachment of the container from its respective tube, the restriction of each elastic fastener being sufficiently limited to permit its respective container to detach from its respective tube upon one or more of

(1) at least partially filling the container with fluid and (2) shaking the housing;

wherein the apparatus is configured to fill the containers substantially simultaneously with fluid;

and wherein at least first and second ones of the plurality of containers are disposed sufficiently close to each other such that they press against each other, regardless whether the first and second ones of the plurality of containers are in a filled state or an unfilled state.

'282 Patent at 6:35–48.

The '749 Patent has only one claim, which recites as follows:

1. An apparatus comprising:

a housing comprising an opening at a first end and a plurality of holes extending through a common face of the housing at a second end;

a plurality of hollow tubes, each hollow tube attached to the housing at a respective one of the holes at the second end of the housing;

a plurality of containers, each container removably attached to a respective one of the hollow tubes;

and a plurality of elastic fasteners, each elastic fastener clamping a respective one of the plurality of containers to a respective tube, and each elastic fastener configured to restrict detachment of its respective container from its respective tube and to automatically seal its respective container upon detachment of the container from its respective tube, the restriction of each elastic fastener being sufficiently limited to permit its respective container to detach from its respective tube upon one or more of (1) at least partially filling the container with a fluid and (2) shaking the housing;

wherein the apparatus is configured to fill the containers substantially simultaneously with the fluid.

'749 Patent at 6:35–57.

## CLAIM CONSTRUCTION PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313–14; *Bell Atl. Network Servs., Inc. v. Covad*

*Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312–13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003). Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp.v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning than it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343–44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct." *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). The well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002); *see also Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003) ("The disclaimer . . . must be effected with 'reasonable clarity and deliberateness.'") (citations omitted)). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d

1372, 1378–79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

In patent construction, "subsidiary fact finding is sometimes necessary" and the court "may have to make 'credibility judgments' about witnesses." *Teva v. Sandoz*, 135 S.Ct. 831, 838 (2015). In some cases, "the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Id.* at 841. "If a district court resolves a dispute between experts and makes a factual finding that, in general, a certain term of art had a particular meaning to a person of ordinary skill in the art at the time of the invention, the district court must then conduct a legal analysis: whether a skilled artisan would ascribe that same meaning to that term *in the context of the specific patent claim under*

*review*." *Id.* (emphasis in original). When the court makes subsidiary factual findings about the extrinsic evidence in consideration of the "evidentiary underpinnings" of claim construction, those findings are reviewed for clear error on appeal. *Id.*

## DISCUSSION

The parties dispute the meaning of the following claim terms, which are set forth herein:

### I. "automatically seal … upon detachment" ('749 Patent, Claim 1; '282 Patent, Claim 1)

| Claim Term | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| **"automatically seal … upon detachment"** **('749 Patent, Claim 1; '282 Patent, Claim 1)** | No construction needed; the plain and ordinary meaning of the claim language as understood by a person of skill in the art is readily apparent | "The elastic fastener (and not another structure) seals the container automatically at the time the container detaches from the hollow tubes." |

While Defendants initially indicated their dispute rested with the term "automatically seal" as a limitation of the elastic fastener based on how the Easy Einstein balloons work, Defendants now seek to construe the entire phrase, adding a further temporal limitation upon detachment. Plaintiffs argue that the plain claim language is not ambiguous and that the plain and ordinary meaning should apply. (Doc. No. 316, at 3.) Plaintiffs argue that Defendants' proposed construction adds a negative limitation of "and not another structure" where there is no express disclaimer to support such a limitation in the claim language. *Id.* at 4. Further, Plaintiffs argue there is no support to artificially constrain the phrase temporally as Defendants propose. *Id.* at 5. Defendants argue that the intrinsic evidence makes it clear that it must be the elastic fastener that performs the automatic sealing. (Doc. No. 320, at 2.) Defendants contend that the claim also states that the sealing performed by the elastic fastener occurs automatically "upon detachment"

and that the Court should therefore construe the term "upon" to mean "at the time the container detaches from the hollow tubes." *Id.* at 2–3.

As an initial matter, Defendants' proposed construction of the claim term offers very little in addition to what is clearly and plainly stated in the claim itself. Here, the claims recite "each elastic fastener configured to restrict detachment of its respective container from its respective tube and to automatically seal its respective tube upon detachment of the container from its respective tube…" '749 Patent at 6:45–50; '282 Patent at 6:43–47. As to Defendants' proposed construction on "automatically seal," Defendants seek to limit the sealing to the elastic fastener "and not another structure." (Doc. No. 320, at 1.) While Defendants' proposal is generally consistent with what is recited by the plain claim language—that the elastic fasteners are configured to automatically seal the respective tubes—there is simply no support in the intrinsic record nor any express disclaimer for the proposed negative limitation "and not another structure." *See Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (concluding there was no basis for the addition of a negative limitation where there was "no express disclaimer or independent lexicography in the written description that would justify adding that negative limitation.").

The primary support provided by Defendants for their negative limitation is a statement by the Examiner from the prosecution history that states, "[t]he sole embodiment which is disclosed in detail in a manner sufficient to satisfy the 35 USC 112(a) possession and enablement requirements is the embodiment which uses a fastener such as an O-ring." (Doc. No. 320, at 4.) This statement, however, is a response by the Examiner, not a disclaimer by the patentee. Accordingly, this evidence fails to support the addition of Defendants' proposed negative limitation to the plain claim language.

Defendants further seek to limit the claim by construing the term "upon" as a temporal limitation to mean "at the time the container detaches from the hollow tubes." But again, this portion of the claim is clear in requiring the elastic fasteners to automatically seal the containers upon detachment. '749 Patent at 6:45–50; '282 Patent at 6:43–47. The claim therefore necessarily contemplates the detachment of the containers to meet the claim limitation of automatically sealing the containers. Thus, the Court finds no need to further construe what is plainly and clearly stated in the claim language.

Because this claim language is clear, and the parties have not identified a legitimate claim scope dispute that warrants any further construction, the Court finds that no construction is necessary for the term "automatically seal … upon detachment."

## II. "fluid" ('749 Patent, Claim 1; '282 Patent, Claim 1)

| Claim Term | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| **"fluid"** <br><br> **('749 Patent, Claim 1; '282 Patent, Claim 1)** | No construction is needed; the plain and ordinary meaning of the claim language as understood by a person of skill in the art is readily apparent | "a liquid, gas or other substance tending to flow or conform to the outline of its container." |

Plaintiffs contend that the Court applied the plain and ordinary meaning of "fluid" in the prior actions and that it should do the same here. (Doc. No. 316, at 5.) Plaintiffs further argue that Defendants previously contended "fluid" just meant "liquid or gas" and that Defendants' construction has no support in the specification and would confuse the jury. *Id.* Defendants rely on their expert, Dr. Kamrin, in support of their construction. (Doc. No. 320, at 5.) Specifically, Defendants cite to Dr. Kamrin's declaration where he relies on the specification discussing containers with "fluids, such as air, helium, water, medicines, etc." and filling the balloons with gas such as "air or helium." (Doc. No. 320-10, at ¶ 29.) Dr. Kamrin also opines that this meaning

is consistent with the dictionary definition of fluid as "a substance (such as a liquid or gas) tending to flow or conform to the outline of its container." *Id.* at ¶ 30, citing *Merriam-Webster Dictionary*, Ex. G.

Here, the specification provides that the balloons can be filled with a "variety of fluids, such as air, helium, water, medicines. etc." *See, e.g.*, '749 Patent at 1:26–27. The specification also provides that the containers may be filled with body fluids such as "urine, blood." *Id.* at 3:29–30. The specification specifically provides that these embodiments are not limiting, stating "[v]irtually any type and kind of fluid may be used within the broad scope of the embodiments." *Id.* at 3:31–33.

The parties have not provided any legitimate claim scope dispute with respect to the meaning of the term "fluid." While Plaintiffs contend that no construction is necessary other than the plain and ordinary meaning, they do not dispute the accuracy of Defendants' proposed construction and instead simply state that it would confuse the jury. Similarly, Defendants provide no basis for why this term needs construction and why the plain and ordinary meaning would be insufficient, as Defendants rely on definitions consistent with that meaning. Moreover, as described above, the use of the term "fluid" is not limiting in the specification and not used in a manner that is inconsistent with the plain and ordinary meaning of the term as proposed by either party. Accordingly, the Court finds that no construction is necessary and the term "fluid" shall be given its plain and ordinary meaning.

## **CONCLUSION**

For the foregoing reasons, the Court adopts the constructions set forth above.

**So ORDERED and SIGNED this 9th day of July, 2018.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE