# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| TINNUS ENTERPRISES, LLC and ZURU LTD., | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 6:17-CV-00170-RWS |
| TELEBRANDS CORPORATION, BULBHEAD.COM, LLC and BED BATH & BEYOND INC., | § § § § § | |
| Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs Tinnus Enterprises, LLC's ("Tinnus") and ZURU Ltd.'s ("ZURU") (collectively "Plaintiffs") Motion for Injunctive Order and Bond Amount (Docket No. 100) and Defendants Telebrands Corp. ("Telebrands"), Bulbhead.com, LLC ("Bulbhead"), and Bed Bath & Beyond Inc.'s ("Bed Bath & Beyond") (collectively "Defendants") Response to Court's Order Regarding Form of Injunction (Docket No. 102). On May 19, 2017, the Court issued a sealed Memorandum Opinion and Order (Docket No. 89) granting Plaintiffs' Motion for a Preliminary Injunction (Docket No. 41) and ordered the parties to meet and confer regarding the appropriate amount for bond and the form of the injunctive order. Docket No. 142. Upon consideration of the arguments, the Court resolves those disputes and sets forth the terms of the injunction herein.

As an initial matter, Defendants argue that the Court should take no further action on the preliminary injunction until the Court has ruled on Defendants' Motion to Dismiss for Improper Venue (Docket No. 90). Docket No. 102 at 1–2. Defendants argue that, as a result of *TC Heartland*

*LLC v. Kraft Foods Grp. Brands LLC*, No. 16-341, 2017 WL 2216934, at *3 (Sup. Ct. May 22, 2017), venue is improper in this district. Docket No. 102 at 1–2. Defendants cite *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F. 2d 1509, 1515 n.3 (10th Cir. 1991), *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005), *Stuart v. Stuart*, No. 3:12-CV-159 CSH, 2012 WL 370089, at *2 (D. Conn. Feb. 3, 2012) and *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *8 (N.D. Cal. July 1, 2011) and state that Plaintiffs' claims, including the motion for a preliminary injunction, cannot proceed because venue is improper. Docket No. 102 at 2. Defendants contemporaneously filed an Emergency Motion to Stay (Docket No. 91) requesting that the Court stay the entry of this injunction. Defendants' Motion to Stay is substantially identical to and requests the same relief as their request in their Response to Court's Order Regarding Form of Injunction (Docket No. 102) for the injunctive order to be stayed. *See* Docket No. 91 at 2–3 and Docket No. 102 at 1–2. The Court will therefore address both the Motion to Stay and the request in the Response to Court's Order Regarding Form of Injunction together here.

The Court finds that a stay of the entry of this injunction would be inappropriate. Defendants' request is based on a complex set of motions, including motions relating to venue, transfer, and failure to state a claim, all of which are in the early stages of briefing. Delaying entry of this Order and allowing Defendants to continue selling the Easy Einstein Balloons products while the Court analyzes each of these motions would undermine the purpose of the preliminary injunction against Defendants—to maintain the status quo until the resolution of the litigation. *See Abbott Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1344–45 (Fed. Cir. 2008).

This is especially true given the history of this case. Plaintiffs and Defendants are direct competitors in a two-player market for a seasonal product. Docket No. 89 at 25. Defendants have

launched a new product at the beginning of each summer season for the last three years. *See* Docket No. 1 in Case No. 6:15-cv-551; Docket No. 1 in Case No. 6:16-cv-33; Docket No. 1 in Case No. 6:17-cv-170. Defendants have continued selling their product throughout the entire summer season before being enjoined by this Court. *See* Case No. 6:15-cv-551 (where a motion for preliminary injunction was filed on June 18, 2015 (Docket No. 7), the Magistrate Judge recommended granting the motion on September 11, 2015 (Docket No. 66), Defendants objected to the Magistrate Judge's recommendation on September 25, 2015 (Docket No. 70), this Court adopted the Magistrate Judge's recommendation on December 2, 2015 (Docket No. 84), and an injunctive order was entered on December 22, 2015 (Docket No. 91)); *see also* Case No. 6:16-cv-33 (where a motion for preliminary injunction was filed on May 3, 2016 (Docket No. 19), the Magistrate Judge recommended granting the motion on July 20, 2016 (Docket No. 99), Defendants objected to the Magistrate Judge's recommendation on August 1, 2016 (Docket No. 102), a hearing was held on Defendants' objections on August 23, 2016 (Docket No. 130), this Court adopted the Magistrate Judge's recommendation on September 29, 2016 (Docket No. 142), and an injunctive order was entered on October 31, 2016 (Docket No. 159)); *see also* Case No. 6:17-cv-170 (where motion for preliminary injunction was filed on April 3, 2017 (Docket No. 41), the motion was granted on May 19, 2017 (Docket No. 89), and Defendants requested that the Court stay the entry of the injunctive order on May 26, 2017 (Docket No. 102)). Then, each year, following issuance of the injunction, Defendants have released a slightly altered product at the beginning of the next summer season. *See* Docket No. 1 in Case No. 6:16-cv-33; Docket No. 1 in Case No. 6:17-cv-170. Defendants now seek to repeat this process and to continue to sell, at the height of the summer season, a product against which a preliminary injunction has already been granted while the Court

considers its motions. Allowing this would only add to the irreparable harm that the Court has already found to exist.

The cases cited by Defendants do not compel a different result. In *Chrysler*, the Tenth Circuit held that a district court lacked jurisdiction to clarify its order transferring the case after it had been docketed in the transferee forum. *Chrysler*, 928 F.2d at 1521–22. The Tenth Circuit explained that, unlike transfer under 35 U.S.C. § 1404(a), where venue is proper in both the transferor and transferee forums, transfer under § 1406(a) is mandatory once the district court has determined that venue is improper: "in the case of § 1406(a), the transferor court lacks venue and *must* transfer the action in order for it to proceed." *Id.* at 1515 n.3 (emphasis original). Unlike in *Chrysler*, the Court in this case has not made a determination on venue, nor has Defendants' venue motion even been fully briefed. *Chrysler* is therefore inapplicable here.

Further, the defendants in *Stuart* and *Richmond* each raised their venue arguments prior to the Court's consideration of any preliminary-injunction issues. *See Stuart*, 2012 WL 370089, at *2; *Richmond*, 2011 WL 2607158, at *1. Here, however, the Court granted the preliminary injunction against Defendants before Defendants filed the motions that underlie their request to stay the entry of the injunction.[1] *See* Docket No. 89. Finally, in *Hendricks*, the district court issued a temporary restraining order and a preliminary injunction before reaching a determination on venue, and the Ninth Circuit affirmed. *Id.* at 1132, 1142.

---

[1] The Court notes that Defendants filed a "Contingent Motion to Dismiss for Improper Venue" (Docket No. 68) after the hearing on the motion for preliminary injunction but prior to the Court's granting of the injunction. However, in their contingent motion, Defendants did not move to dismiss for improper venue, but instead stated that "[u]nder present Federal Circuit venue law, which defendants recognize that this Court is bound to apply, venue is appropriate. . . . [I]f the Supreme Court rules in *TC Heartland* that the venue rule stated in *Fourco* applies to patent cases, Defendants move this Court to dismiss for improper venue." Docket No. 68 at 2. Defendants did not ask this Court to dismiss the action for improper venue, but instead asked the Court "simply to hold the matter in abeyance pending [the Supreme Court's] ruling . . . ." *Id.* at 3. Therefore, the Court could not have dismissed or transferred the case until Defendants filed their Motion to Dismiss (Docket No. 90) on May 26, 2017, one week after the Court granted the injunction (Docket No. 89).

Accordingly, the Court **DENIES** Defendants' request to stay the issuance of this Order and **DENIES** Defendants' Emergency Motion to Stay (Docket No. 91).[2]

The parties present two main disputes with respect to the issuance of the injunctive order: (1) whether Bed Bath & Beyond should be permitted to sell off its remaining inventory; and (2) whether the bond should be set at ▮.

First, regarding Defendants' request that Bed Bath & Beyond be permitted to sell through its remaining inventory, the Court sees no reason to grant such a request. Defendants summarily repeat their invalidity and non-infringement arguments and argue that Bed Bath & Beyond purchased its current inventory in "good faith," stating that "[t]he fact that the [C]ourt has found that the PVC cap . . . is an elastic fastener is, at a minimum, heavily debatable." Docket No. 102 at 6. The Court is unaware of—and Defendants fail to cite to—any authority that permits an exception to a preliminary injunction on a showing of "good faith." Further, to the extent that Defendants argue the underlying merits of the motion for a preliminary injunction, the Court has already rendered a decision on that motion. *See* Docket No. 89 at 30 ("Having found that all four factors weigh in favor of granting a preliminary injunction, Plaintiffs' Motion for Preliminary Injunction (Docket No. 41) is GRANTED."). The Court therefore **DENIES** Defendants' request.

Second, with respect to the bond amount, Telebrands requests the bond be set at ▮, which Defendants estimate would cover the financial losses they would suffer if later found to be improperly enjoined. Docket No. 102 at 3–4. Plaintiffs assert that a bond of ▮ would be appropriate. Docket No. 100 at 2. Defendants bear the burden of showing the extent of their injury resulting from an injunction prohibiting the sale or offering for sale of the Easy Einstein

---

[2] Defendants' Motion to Stay substantively addresses only whether the Court should delay entry of the injunctive order, which the Court has addressed in this Order. *See* Docket No. 91. This Order does not prejudice Defendants' ability to file a motion to stay any other aspect of the proceedings in this case, though the Court notes that there are no pending deadlines and that a scheduling order has not yet been entered.

products. *See Oakley, Inc. v. Sunglass Hut Int'l*, No. SA CV 01-1065 AHS, 2001 WL 1683252, at *12 (C.D. Cal. Dec. 7, 2001), *aff'd on other grounds*, 316 F.3d 1331 (Fed. Cir. 2003) ("A successful movant for a TRO or preliminary injunction must post security 'for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.' It is Defendants' burden to reasonably estimate the extent to which they would be damaged if this preliminary injunction were improvidently granted." (quoting FED. R.CIV. P. 65(c)). "The amount of a bond is a determination that rests within the sound discretion of a trial court." *Sanofi–Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1386 (Fed. Cir. 2006).

Here, Telebrands asserts that it would suffer ▮▮▮▮ in losses if wrongly enjoined. Docket No. 102 at 5. Telebrands has submitted a declaration of its Executive Vice President and COO, Bala Iyer, in support of its proposed portion of the bond. Docket No. 102-1. Telebrands states that it has sold ▮▮▮▮ of Easy Einstein Balloons so far this year and estimates that it would sell another ▮▮▮▮ this year if not for the injunction, leading to a loss of ▮▮▮▮ *Id.* at ¶¶ 13–14. Telebrands also contends that sales of the Easy Einstein Balloons in 2018 would mirror those of the Battle Balloons in 2016 and that it would therefore lose sales of ▮▮▮▮ of Easy Einstein Balloons in 2018 for a loss of approximately ▮▮▮▮. *Id.* at ¶ 11. Telebrands therefore estimates its total loss to be ▮▮▮▮. *Id.* at ¶ 16.

Bed Bath & Beyond has submitted a declaration of its employee, James Seymour, in support of its proposed portion of the bond. Docket No. 102-2. Bed Bath & Beyond states that its total retail sales of the Easy Einstein Balloons product so far this year has been approximately ▮▮▮▮. *Id.* at ¶ 7. Bed Bath & Beyond estimates that, because it sold ▮▮▮▮ of balloons last year and expects a yearly decrease in revenue for these products of ▮▮▮▮, it would

generate another ▮ in revenue on the product the rest of this year. *Id.* at ¶ 5–7. Based on these retail numbers and their estimated margin of approximately ▮, Bed Bath & Beyond estimates that it will lose approximately ▮ in profits this year as the result of the injunction. *Id.* at ¶ 9. Bed Bath & Beyond also contends that sales of the Easy Einstein Balloons in 2018 would decrease another ▮, and that it would therefore have generated ▮ in revenue on the product in 2018 for a loss of ▮ in profits. *Id*. at ¶ 10. Bed Bath & Beyond therefore ▮. *Id*. at ¶ 11.

Plaintiffs argue that Defendants have failed to meet their burden of showing a rational basis for the proposed bond amount. Docket No. 100 at 4. Plaintiffs argue that while Telebrands here states that its Battle Balloons product made a substantial profit in 2016 in order to support its proposed bond amount, Telebrands's own documents in Case No. 6:16-cv-33, a case between these same parties over the Battle Balloons product, state that the Battle Balloons product produced a net loss of ▮. *Id.* at 5. Plaintiffs state that Telebrands's inconsistent numbers are not reliable and cannot support a bond amount. *Id*. at 6. Plaintiffs further contend that while Telebrands has based its projected losses on Battle Balloons revenues for 2016, Telebrands has not shown any rational basis to use those numbers for the Easy Einstein Balloons product, which has underperformed its predecessor to date and which Telebrands has stated is substantially different from the Battle Balloons product. *Id.* at 6–7. Plaintiffs also argue that Telebrands should not have based its bond amount on two years' worth of sales, as the bond amounts for each of the two prior preliminary injunctions entered against Telebrands in the related cases in this Court were based off a single year's sales. *Id*. at 7.

Plaintiffs also argue that Bed Bath & Beyond's portion of the proposed bond amount is unsupported. Plaintiffs contend that Bed Bath & Beyond's methodology for calculating its bond

amount is based on the same flawed methodology used by Telebrands. *Id*. Plaintiffs further argue that in the related cases, Telebrands stated that it would provide credits to retailers that returned products based on the injunction, which, if offered here, would eliminate any losses to Bed Bath & Beyond. *Id.* at 8.

Plaintiffs argue that the bond amount should be set at ▮ because neither Defendant has met its burden of supporting its proposed bond amount. *Id.*

The Court credits Mr. Iyer's estimation of Telebrands's sales of Easy Einstein Balloons for the remainder of 2017. Further, the Court notes that a trial date has not yet been set for this case. In each of the related actions, the trial date was set approximately 18 months from the scheduling conference. Therefore, the Court finds it appropriate to include projected lost sales from 2018 in the calculation for the bond amount.

However, the Court finds Telebrands's projections for its 2018 sales to be unsupported. Telebrands's calculations for its lost profits in 2018 rely on an assumption that 2018 sales of the Easy Einstein Balloons product will mirror the 2016 sales of the Battle Balloons product. While the Court notes that the Easy Einstein Balloons sales may have suffered some this year due to a recall on the product—an event that is unlikely to be repeated in 2018—the Court finds Telebrands's estimation for 2018 sales to be overly speculative. The Easy Einstein Balloons product is ▮▮▮. Therefore, the Court will base Telebrands's projected lost profits for 2018 on its projected profits for the Easy Einstein Balloons product in 2017.

Telebrands estimates that it would sell a total of ▇▇▇ units of Easy Einstein Balloons in 2017 absent an injunction. Docket No. 102-1 at ¶¶ 13–14. As Telebrands has already sold approximately ▇▇▇ in 2017, *see id.* at ¶ 13, the Court finds that Telebrands is likely to lose ▇▇▇ in 2017 and ▇▇▇ in 2018. Based on Telebrands's estimated average price of ▇▇▇ and ▇▇▇ profit margin, Telebrands would lose approximately ▇▇▇ on the ▇▇▇ lost in 2017 and approximately ▇▇▇ on the ▇▇▇ lost in 2018. Accordingly, the Court finds that Telebrands has shown that it is reasonably likely to suffer a total of approximately ▇▇▇ in losses due to this injunction.

As to Bed Bath & Beyond, the Court finds that its proposed bond amount is unsupported. Bed Bath & Beyond bases its bond amount entirely on sales numbers for the Battle Balloons product from 2016 and ignores the sales data it has for the Easy Einstein Balloons product for this year. Bed Bath & Beyond states that its total retail sales of this year for Easy Einstein Balloons, which first went on sale in March, is ▇▇▇. Docket No. 102-2 at ¶ 7. It is unclear to the Court why retail sales for the second half of 2017—which Bed Bath & Beyond estimates to be ▇▇▇—would equal almost the total sales for Battle Balloons in 2016—▇▇▇—especially given that Bed Bath & Beyond estimates that sales for the products will decline with time. *See Id.* Therefore, the Court will assume that Bed Bath & Beyond's sales of Easy Einstein Balloons will continue at the current pace, approximately ▇▇▇ per three-month period, for a total revenue of approximately ▇▇▇ through the end of 2018. Given Bed Bath & Beyond's estimated profit margin of approximately ▇▇▇, the Court finds that Bed Bath & Beyond has shown it is reasonably likely to suffer approximately ▇▇▇ in losses due to this injunction.

Accordingly, the Court will set Plaintiffs' total bond amount at $4,250,000.

Having considered the parties' submissions and for the reasons set forth in Docket No. 89, it is hereby **ORDERED** as follows:

- The Court **FINDS** that Plaintiffs have carried their burden of showing (a) that Plaintiffs will likely succeed on the merits of their patent infringement claims by showing that U.S. Patent Nos. 9,242,749 ("'749 Patent") and 9,315,282 ("'282 Patent") are valid and enforceable and that Defendants have infringed the '749 Patent and the '282 Patent, (b) that Plaintiffs have suffered and will continue to suffer irreparable harm if a preliminary injunction is not entered, (c) that the balance of hardships between Plaintiffs and Defendants favors the Plaintiffs, and (d) that the public interest would be served by issuing a preliminary injunction in the present case. *See* Docket No. 89.

- Pursuant to Federal Rule of Civil Procedure 65, 35 U.S.C. § 271, 35 U.S.C. § 283 and the inherent equitable powers of the Court, the Court hereby preliminarily **RESTRAINS AND ENJOINS** Defendants, their officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with Defendants who receive actual notice of this Order by personal service or otherwise from making, using, importing, marketing, advertising, offering to sell, or selling in the United States the Easy Einstein Balloons product or any colorable imitation of the same that infringes the '749 Patent and/or the '282 Patent. *See* Fed. R. Civ. P. 65(d).

- This preliminary injunction shall remain in effect until further order of this Court.

- Plaintiffs are directed to file proof of bond in the amount of $4,250,000 within seven (7) business days of this Order. *See* Fed. R. Civ. P. 65(c). The bond shall serve as security for all claims with respect to this preliminary injunction.

- Within seven (7) days of the issuance of this Order, the parties shall file a notice with the Court as to whether this Order can be unsealed, or request appropriate redaction.

Further, Defendants' Emergency Motion to Stay (Docket No. 91) is **DENIED** for the reasons stated above.

**SIGNED this 16th day of July, 2018.**

*[signature: Robert W. Schroeder III]*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE