**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **TINNUS ENTERPRISES, LLC,   ZURU LTD.,   ZURU INC.,   ZURU UK LTD., ZURU LLC,  ZURU PTY LTD.,** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO.  6:17-CV-00170-RWS** |
| **Plaintiffs,** | | |
| **v.** | | |
| **TELEBRANDS          CORPORATION, BULBHEAD.COM, LLC,   BED BATH & BEYOND INC.,** | | |
| **Defendants.** | | |

## ORDER

Before the Court is Plaintiffs' Tinnus Enterprises LLC and ZURU Ltd. ("Plaintiffs") Motion to Strike Portions of the Expert Report of Dr. John Hatch. (Doc. No. 378.) Defendants, Telebrands Corp., Bulbhead.com LLC, and Bed Bath & Beyond, Inc.("Defendants") have filed a response (Doc. No. 418), to which Plaintiffs have filed a reply (Doc. No. 445). Upon consideration of the parties' arguments, Plaintiffs' Motion (Doc. No. 378) is **GRANTED-IN-PART and DENIED-IN-PART** as set forth herein.

## BACKGROUND

In this action, Plaintiffs allege that Defendants infringe certain claims of U.S. Patent Nos. 9,315,282 ("the '282 Patent") and 9,242,749 ("the '749 Patent") (collectively "the patents-in-suit").  On September 14, 2018, Defendants served the expert report of their damages expert, Dr. John Hatch. (Doc. No. 378-2.)   Plaintiffs move to strike portions of Dr. Hatch's report as unreliable and for untimely disclosure. (Doc. No. 378.)

1

**LEGAL STANDARD**

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed.R.Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field."); *TQP Dev. LLC v. 1-800-Flowers.com, Inc.*, Case No. 2:11-cv-248-JRG, 2015 WL 6694116, at *4 (E.D. Tex. Nov. 3, 2015) ("Dr. Becker was entitled to rely upon Dr. Jager's technical analysis when constructing his damages model and presenting it to the jury.").

"The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010)."The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## ANALYSIS

Plaintiffs seek to strike Dr. Hatch's opinions regarding two scenarios: (1) his assumption involving a hand-tied non-infringing alternative; and (2) under a scenario where there are no non-infringing alternatives. (Doc. No. 378, at 2.) As to the first scenario, Plaintiffs argue that Dr. Hatch's opinions should be excluded because this theory was never disclosed during discovery and Dr. Hatch has admitted that he had not seen this alternative and does not know whether it works. *Id.* at 5–6. As to scenario two, Plaintiffs argue that Dr. Hatch's opinions regarding *Panduit* Factors 1 and 4 ignored his own admissions and were legally erroneous. *Id.* at 8–9. Specifically, with respect to Factor 1, Plaintiffs contend that Dr. Hatch improperly discusses the

As Seen on TV sections, and with respect to Factor 4, he similarly relies on the As Seen on TV sections to discuss profit. *Id.* at 10–11.

Defendants contend that with respect to scenario one, Dr. Hatch is permitted to rely on Dr. Kamrin and that Plaintiffs had the opportunity to examine fact and expert witnesses regarding this alternative during discovery. (Doc. No. 418, at 5.) As to scenario two, Defendants contend that Plaintiffs really just dispute the amount of lost profits opined on by Dr. Hatch and argue that Dr. Hatch made no "concession" or admission that Dr. Ugone's opinions were correct, but instead merely accepted that there would be demand for the Bunch O Balloons products to start his analysis under *Panduit* factor two. *Id.* at 6.

### A. Scenario One

Plaintiffs contend that under "Scenario 1," Dr. Hatch assumes that an alleged hand-tied balloon product is an acceptable, available non-infringing alternative and opines that, assuming that the hand-tied balloon product is a non-infringing alternative, Plaintiffs should receive no damages if Telebrands has infringed. (Doc. No. 378, at 4–5, citing Doc. No. 378-2, at ¶¶ 14, 16, 103–11.) Plaintiffs contend that disclosure of this non-infringing alternative is untimely because it was never disclosed prior to Dr. Hatch's September 14, 2018 report. *Id.* at 5. Plaintiffs further argue that Dr. Hatch admitted in his deposition that he (1) had not seen the claimed hand-tied balloon alternative when he served his expert report, and (2) does not know whether it works. *Id.* at 6, citing Doc. No. 378-3, at 171:18–173:2. Plaintiffs argue that Dr. Hatch's 0% reasonable royalty is a misstatement of the law, which entitles Plaintiffs to some damages if infringement is found. *Id.* at 7, citing 35 U.S.C. § 284 ("[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a

reasonable royalty for the use made of the invention by the infringer . . .”). Plaintiffs argue that these opinions are nonsensical, unreliable, and defy common sense. *Id.* at 7–8.

Defendants contend that the hand-tied product came up during the depositions of both Mr. Khubani, Telebrands's CEO, and Mr. Iyer, Telebrands's COO, and was disclosed in a supplemental interrogatory response. (Doc. No. 418, at 8.) Defendants further point out that Dr. Hatch is allowed to rely on Dr. Kamrin regarding the non-infringing nature of the hand-tied product. *Id.* at 10. Defendants also argue that a 0% royalty is permissible where Defendants would view Plaintiffs' patents as worthless and could design around without incurring additional costs. *Id.* at 11–12.

As an initial matter, the Court will not strike the opinions on a non-infringing alternative on the basis that they were untimely. As discussed with respect to Plaintiffs' Motion to strike the rebuttal expert report of Dr. Kamrin, it appears the hand-tied alternative product did come up during the course of fact discovery during the August 29, 2018 deposition of Bala Iyer. *See* Doc. No. 417-3, at 170:6–22. Both Dr. Kamrin and Dr. Hatch then subsequently included this alternative in their expert reports served on September 14, 2018. Doc. No. 376-2, at ¶¶ 69–71; Doc. No. 378-2, at ¶ 82, 101, 103–11. Defendants did also supplement their interrogatory response on October 3, 2018. Whether or not this disclosure was ultimately untimely is difficult for the Court to ascertain given that clearly this "alternative" product was being developed at some point during the course of discovery in this action. Plaintiffs did, however, have the opportunity to depose Mr. Iyer and Mr. Khubani regarding this development, as well as Dr. Hatch, during the course of expert discovery. The fact that the product is not on the market does not make it *per se* an unacceptable alternative. *See Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, 875 F.3d 1369, 1381 (Fed. Cir. 2017*); see also Grain Processing Corp. v. Am.*

*Maize Products Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999) ("[A]n available technology not on the market during the infringement can constitute a non-infringing alternative.") Rather, the practicality of such a product as an alternative is a point to be challenged on cross-examination.

The Court, however, draws serious concern regarding the reliability of Dr. Hatch's opinions that a 0% royalty is appropriate based on this non-marketed hand-tied water balloon product. Defendants rely on a Third Circuit case and a Federal Circuit case to argue that courts have endorsed 0% royalties. (Doc. No. 418, at 12) (citing *Devex Corp. v. General Motors Corp.*, 667 F.2d 347, 363 (3rd Cir. 1981) (approving a 0% royalty and explaining that "[section 284] requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute."); *Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 (Fed. Cir. 2014) (explaining that a 0% royalty award could be appropriate "in a case completely lacking any evidence on which to base a damages award" or if the "record . . . demonstrate[s] that, at the time of infringement, the defendant considered the patent valueless.").) These cases are distinguishable because here, Dr. Hatch, is basing his 0% royalty on a late-disclosed hand-tied alternative product that has not yet come to market. Moreover, the record reveals that the accused products—Telebrands's Easy Einstein Balloons—represent Defendants' third attempted design around, all of which have been subject to injunctions issued by this Court. This simply is not a case where there is no evidence to support any award of a reasonable royalty. Therefore, the Court finds that Dr. Hatch's opinions relating to a 0% royalty are inherently unreliable and Plaintiffs' Motion is accordingly **GRANTED-IN-PART** as to Scenario One.

### B.  Scenario Two

Plaintiffs contend that under "Scenario 2," Dr. Hatch assumes that sales of Easy Einstein Balloons infringe rights held by ZURU and there are no non-infringing alternatives and therefore Dr. Hatch offered damages opinions based on (1) lost profits and (2) a reasonable royalty. (Doc. No. 378, at 2.) Plaintiffs challenge these opinions because they argue that Dr. Hatch's opinions regarding *Panduit* Factors 1 and 4 ignored his own admissions and were legally erroneous. *Id*. at 8. Specifically, Plaintiffs contend that in his deposition Dr. Hatch conceded that there was demand for the patented product and therefore contradicted his own opinions with respect to *Panduit* Factor 1. *Id.* at 9–10. For these same reasons, Plaintiffs argue that Dr. Hatch's opinions regarding the amount of profit Plaintiffs would have made under *Panduit* Factor 4 are conclusory and make no sense. *Id.* at 10–11. Defendants contend that Plaintiffs cherry-pick Dr. Hatch's testimony and mischaracterize it as a concession. (Doc. No. 418, at 14–15.)

The dispute ultimately raises questions regarding the weight and credibility of Dr. Hatch's opinions, which are to be resolved by the trier of fact. The Court finds no basis to exclude Dr. Hatch's opinions on the grounds they may be conclusory or contradictory. Such attacks on his opinions can be appropriately made through thorough cross-examination. Therefore, Plaintiffs' Motion is **DENIED** as to Scenario Two.

### CONCLUSION

For the reasons explained herein, Plaintiffs' Motion (Doc. No. 378) is **GRANTED-IN-PART and DENIED-IN-PART** as set forth herein.

**So ORDERED and SIGNED this 31st day of October, 2018.**

_____

JOHN D. LOVE

UNITED STATES MAGISTRATE JUDGE